The plaintiff Battle, under an order in a supplementary proceeding against the defendant James M. Mayo instituted by T. P. Braswell Co., judgment creditors of said Mayo, was appointed receiver on 7 January, 1887, after judgment creditors of Mayo had been made parties to that proceeding.
The plaintiff alleges in the complaint:
1. That on 14 January, 1886, the defendants, A. H. Ricks and A. L. Taylor, executed three sealed notes to Carr Bros. Co., each for the sum of five hundred dollars, with interest from date at eight per cent, payable, respectively, 1 September, 1886, 1 November, 1886, and 1 January, 1887.
2. That on each of said notes are the following endorsements:
"For value received, we hereby transfer all our interest in the within note to J. M. Mayo, or order. (Signed) M. J. CARR. J. B. CARR. 14 January, 1886."
 "Pay to the order of W. T. Mayo, trustee, for F. L. Mayo. (Signed) JAMES M. MAYO."
That on the note maturing 1 November, 1886, there is a credit (415) endorsed as follows:
"Received, 20 December, 1886, one hundred and fifty-eight and 57/100 dollars ($158.57) (Signed) W. T. MAYO, Trustee." *Page 322 
After alleging his own appointment as receiver, at the date mentioned and barring other judgment creditors, who have intervened in the supplementary proceedings, the plaintiff alleges that the notes mentioned a now in his hands, and are, as far as creditors are concerned, the property of James M. Mayo; that he transferred them to his brother, the defendant W. T. Mayo, for his wife, the defendant F. L. Mayo, with intent to hinder, delay and defraud creditors, without consideration, and as a mere gift.
The plaintiff demands judgment against the obligors on the notes, the defendants A. H. Ricks and A. L. Taylor, for the sum alleged to be due on the notes, and that the judgment be applied, after deducting costs and charges, to the payment of their judgments of the plaintiff's creditors.
Subsequently, and after vacating a judgment by default, at the November Term, 1887, in reference to the action above named, and three other actions, brought by the plaintiff Battle, and pending in the same court, the following order was made:
"It is now, on motion of the plaintiff, and with consent of the defendants, ordered by court that the four actions be consolidated, and that J. M. Mullen, Esq., be and he is hereby appointed a referee, under C. C. P. to find all issues of law and of fact therein involved. And the defendants are to be allowed sixty days in which to file answers."
In an amended complaint, consolidating the four actions, the receiver subsequently alleged that, with the same fraudulent intent, the defendant James M. Mayo had transferred to his said wife: (416) The equitable interest in the Williford tract of land (he having contracted to pay about $1,200, for the land, and having paid over half the price).
2. The Baker land (explained below).
3. The Ricks and Taylor notes.
4. Oxen, stock and farming utensils.
5. A piece of land, of about 300 acres, in Edgecombe, with stock on it.
6. The Charley Knight place, of about forty acres.
The other facts that will throw light upon the exceptions, appear the report of the referee, the exceptions and the judgment.
REPORT OF REFEREE.
1. That the following judgments, obtained and docketed, as hereinafter appears, against the defendant Jas. M. Mayo, are unpaid; that executions have been duly issued thereon, and the same returned wholly unsatisfied to wit: *Page 323 
(a) Three judgments in favor of John G. Spotts and George Gibson, copartners trading as Sports Gibson — one for $346.17, with interest from 26 March, 1886, and costs, confessed in Nash Superior Court, and docketed therein 23 April, 1886, and docketed in Edgecombe Superior Court about the same time; one for $101.48, with interest from 10 April, 1886, and costs, docketed in Edgecombe Superior Court 13 April, 1886, and in Nash Superior Court 23 April, 1886; and one for $41.17, with interest from 15 April, 1886, docketed in Edgecombe Superior Court 17 April, 1886, and in Nash Superior Court 23 April, 1886.
(b) Judgment in favor of T. P. Braswell and M. C. Braswell, copartners trading as T. P. Braswell Son, obtained at Spring Term, 1886, of Nash Superior Court, for $360, with interest from 1 November, 1885, and costs, docketed 26 April, 1886, in said court, and docketed also in Edgecombe Superior Court. (417)
(c) Judgments (2) in favor of the Brown Cotton Gin Company — one for $129.15, with interest on $1.15 from 17 November, 1884, and on $128 from 16 September, 1885, and costs, obtained 1 February, 1887, and docketed same day in Nash Superior Court, and one for $144, with interest from 16 September, 1885, and costs, obtained and docketed 1 February, 1887, as above.
(d) Judgment in favor of H. Cohen and her husband Wm. Cohen for $170, with interest from 1 March, 1884, and costs, obtained and docketed as above, 1 February, 1887.
(e) Judgment in favor of Rountree, Barnes Co., for $520.80, with 8 per cent interest from 1 November, 1885, and costs, obtained in Nash Superior Court and docketed there November, 1886.
2. That subsequent to the issuing and return as aforesaid of executions upon said judgments, to wit, on 18 December, 1886, proceedings supplementary to execution were duly instituted before the Superior Court clerk of Nash County by said T. P. Braswell Son, on their said judgment; the defendants herein (Jas. M. Mayo and F. L. Mayo his wife, Mary H. Lyon, who has since intermarried with the defendant Dr. J. C. Braswell, W. T. Mayo, V. W. Land, A. H. Ricks and A. L. Taylor) were also duly served with the clerk's order therein. After an examination before said clerk, an order was duly made in said proceedings, 10 January, 1887, appointing Jacob Battle receiver of the debts, etc., of said J. M. Mayo. Said receiver duly qualified. Afterwards, the other judgment creditors intervened. The orders had and made in said proceedings were duly recorded in Nash and Edgecombe Superior Courts. For fuller particulars, reference is had to the third section of the complaint, the allegations of which are adopted by the referee. (418) *Page 324 
3. That the defendant James M. Mayo is insolvent, and had been insolvent for more than two years prior to 1 January, 1886, but before that time he was in the possession of a large real and personal estate, and was considered to be worth from fifty to seventy-five thousand dollars. He, however, early in 1885, sold most of his real and personal property to different parties, on long time, payable in annual installments, evidenced by their bonds, executed and delivered to them absolute deeds and conveyances therefor, and taking from them contemporaneous mortgages, securing their bonds for the purchase price. These bonds, amounting to about seventy thousand dollars, said Mayo deposited with Rountree Co., merchants, doing business in Norfolk, Va., to secure his indebtedness to them, then amounting to about forty thousand dollars. The property sold as above was worth about twenty-seven thousand dollars, and was sold to parties pecuniarily insolvent. Subsequently, on 18 March, 1886, the aforesaid purchasers having failed to comply, and having, by mutual agreement, surrendered their purchases, said Mayo and wife conveyed said property to said Rountree Co., for the sum of twenty-seven thousand dollars, the purchase price to go as a credit upon said Mayo's aforesaid indebtedness, leaving still due thereon a balance of between sixteen and eighteen thousand dollars, which is still unpaid. A certified copy of said deed, part of the evidence herein, is made a part of this report.
4. That said Mayo, in settlement or part payment of other creditors, conveyed and assigned to them, during the early part of 1886, the balance of his property other than that in litigation in this action. He still owes upon said indebtedness two or three thousand dollars.
5. That prior to 2 February, 1886, the defendant V. W. Land was bound as surety for the defendant Jas. M. Mayo to the Pamlico Banking and Insurance Company, of Tarboro, N.C. in the sum of (419) $3,000, for money borrowed by said Mayo, originally, some time in the spring of 1885. On 2 February, said Mayo deeded to said Land certain real property situate in Edgecombe County, for $2,500. A certified copy of said deed in evidence is made a part of this report.
Said deed was twice recorded: first, 22 February, 1886, and second, 10 March, 1886. (See certified copies.)
About same time said Mayo deeded to said Land a tract of land in Bertie County, worth $1,500; but at the time the same was in litigation, and Land was to pay and has paid the expenses attending that litigation.
Land was to pay for the above property by assuming and paying the bank debt, and paying the wife (the defendant F. L. Mayo) of said Mayo $1,000, Mayo claiming that he was indebted to her.
Shortly after said conveyances, said Land and said Mayo confessed judgment to the bank, the bank refusing to release Mayo. Land has *Page 325 
paid the bank debt down to about $900. He gave Mrs. Mayo his due bill for $1,000, and has paid her $120 thereon — paid the $120 in January, 1888. Land is, and was at the time of said conveyances, a brother-in-law of the defendant Jas. M. Mayo, and was then, and is now, perfectly solvent. At the instance of Land, who became uneasy by reason of rumors of the bonafides of his aforesaid transactions with the defendant Jas. M. Mayo, the bank (a defendant herein), caused execution to issue upon its aforesaid judgment, and, after due advertisement, sold thereunder, on 18 April, 1887, the interest of said Mayo and of said Land in the property in Edgecombe, conveyed as aforesaid to said Land by said Mayo, said Land becoming the purchaser at $2,910, and received the sheriff's deed therefor. Said property was worth $2,910 on 2 February, 1886. Land paid the bank no part of this bid, except that he has been paying off the aforesaid debt from time to time.
6. That said conveyances to the defendant V. W. Land were (420) not made with intent to hinder, delay or defeat creditors.
7. That none of the conveyances and transfers of property, referred to in section 3 and 4 of this report, were made with intent to hinder, delay or defeat creditors.
8. That the defendant Mary H. Lyon (now Braswell) is a niece of both the defendants, James, M. Mayo, and F. L. Mayo, his wife.
On 29 October, 1885, said James M. Mayo was indebted to said Mary H., on account of her distributive share of her grandfather's estate, upon which said Mayo was administrator. She also held a claim of $200, and interest, upon the land of the defendant F. L. Mayo, for equality in division. Said Mayo gave her his note on said 29 October, 1885, for $1,500, to cover both these amounts, which, he believed, was as much as $1,500. On 2 February he executed to the said Mary H. a mortgage to secure said note, which was payable six months after date, whereby he conveyed to her his equitable estate in the Herbert land in Nash County, and certain personal property thereon, consisting of a steam engine, two mules, one farm cart, half interest in a wagon, lot of corn, fodder, tobacco, cottonseed and other personal property upon said farm. Said Mayo also, on same day, executed to said Mary H., another mortgage securing said note, conveying certain lands in Edgecombe County; but there is no controversy as to that mortgage. Said Mayo remained in the possession of said Herbert tract and the personal property aforesaid thereon, and continued in possession until the Herbert tract was sold, about the first of this year, under a prior mortgage, using and enjoying the same, and consuming the property, to wit: the corn, fodder and cottonseed. On ______ February, 1888, the personal property remaining, consisting of one mule, half interest in the (421) wagon, and one cart, were sold, bringing $118, and the proceeds *Page 326 
by agreement deposited with one A. Braswell, to abide the determination of this suit. The engine was also sold, but it was claimed as a fixture by the owner of the land, and brought only $5.
At the time of the execution of said mortgage it was the purpose and intention of said Mayo to remain in the possession of said Herbert place and the personal property thereon, and use, enjoy and consume the same (such as would be consumed by the use), until the same was sold under said mortgage.
9. That the Herbert place, when sold, did not bring enough to pay the first mortgage debt.
10. That prior to 1 January, 1885, and since her marriage, the defendant F. L. Mayo owned, in her own name and right, the tract of land known as the "Lyon" tract, situate in Edgecombe County, and containing about 227 acres. On said date, said F. L. Mayo, joined with her husband, James, M. Mayo, in the conveyance of said land to one W. B. Harper. The purchase bonds therefor were taken, payable to said J. M. Mayo. At the time of said sale to said Harper, and as a consideration therefor to said F. L. Mayo, it was agreed between said J. M. Mayo and his wife, that he would convey to her property, in exchange, of equal value to her property sold Harper. In pursuance of that agreement, the deeds referred to in the pleadings were executed and delivered by J. M. Mayo and wife to W. T. Mayo, trustee, conveying the Lowe tract, containing 360 acres, and the personal property thereon, the Charlie Knight tract, containing about 45 acres, all situate in Edgecombe County, bearing date 1 January, 1885, and were recorded in said county 27 February, 1886. A certified copy thereof is in evidence, and is made a part of this report. The property thereby (422) conveyed is about of equal value to the Lyon tract.
11. That said deed to W. T. Mayo, trustee, was not made with intent to hinder, delay or defeat creditors.
12. That the trust deed from the defendant J. M. Mayo to the defendant W. T. Mayo, conveying the Williford tract, situate in Nash County, bearing date 2 December, 1886, and recorded same day, was not recorded until after the docketing of the judgments, set out in section 1 of this report, in favor of Spotts Gibson, T. P. Braswell Son, and Rountree, Barnes Co,; besides, it was made to hinder, delay and defeat creditors.
13. That at the time of his failure, on or about 1 January, 1886, the defendant J. M. Mayo was justly indebted to his wife, the defendant F. L. Mayo, in the following sums:
(a) One thousand dollars given her by her father in 1873.
(b) Fourteen hundred and thirty-nine dollars, her distributive share of her father's estate, settled in 1882, and upon which said Mayo administered. *Page 327 
(c) One hundred and forty dollars and thirty-seven cents, amount collected for her from J. L. Lyon in 1883.
These amounts were received by J. M. Mayo with the knowledge of his wife, and with her tacit consent for him to use the same. No express understanding or agreement was entered into between them as to payment. The defendant J. M. Mayo treated and used the same as his own property, with no expectation of accounting to his wife therefor. But his said wife was not a party to any agreement that he should so use said money.
This is true as to her land also. No express agreement was entered into between them as to the rents and profits. Her said husband took possession of said lands and used and enjoyed the same and received the rents and profits, as he did the aforesaid sums of money, as a matter of course, and with no expectation of accounting to her therefor. These rents and these sums of money were received by him long (423) prior to 1886, and with the exception of rents accruing thereafter and the small amount received from J. L. Lyon, prior to 1882, when, he admits, he believed himself perfectly solvent, and he gives none in his wife's name for taxes. He has been her agent to list her taxes, and swore to her property.
14. That the defendant F. L. Mayo has received in payment of her aforesaid demands: One thousand dollars, 2 February, 1886, from V. W. Land; eleven hundred and fifty-eight dollars and fifty-nine cents, from A. L. Taylor and A. H. Ricks, during the year 1886, and eight hundred and ten dollars ($810), 2 August, 1886, as appears from credits on the alleged $1,439 note — more than enough to discharge her demands.
The referee therefore concludes:
1. That the mortgage to Mary H. Lyon (now Braswell), conveying the Herbert tract and the personal property thereon, is fraudulent as to creditors and void, and that the plaintiff is entitled to the proceeds of the personal property, to wit, $118, to be applied to the judgment creditors aforesaid, in the order of their priority.
2. That the deed of trust to W. T. Mayo of the Williford tract is fraudulent and void as to creditors. Said land has been sold, by order of Nash Superior Court, to pay the balance due on the purchase money and costs. The plaintiff is entitled to the surplus, to be applied by him as aforesaid.
3. That the plaintiff is entitled to collect and apply the proceeds of the three notes for $500 each (one subject to credits of $158.69, 26 December, 1886), executed by A. L. Taylor and A. H. Ricks, upon which he has obtained judgment, in the manner above stated. For the facts *Page 328 
as to these notes, see section eleven of the complaint, which is adopted to the extent it is admitted by the answer.
(424) 4. That the defendant F. L. Mayo is only entitled to interest on the principal ($2,759.37) of her debt against Jas. M. Mayo from 14 January, 1886, date of assignment to her of the A. L. Taylor and A. H. Ricks bonds.
The defendants filed the following exceptions to the report:
1. That the referee committed error in his eighth finding, wherein he finds that, at the time of the execution of said mortgage to Miss M. H. Lyon, it was the purpose and intention of the said Mayo to remain in the possession of said Herbert place and personal property thereon, and use, enjoy and consume the same, until the same was sold under said mortgage. The only evidence on the subject is found in the testimony of James M. Mayo, on page 22, wherein he testifies as follows: "Miss Lyon got all the tobacco, so far as I know. The corn, fodder and cottonseed embraced in her mortgage were kept upon the land, subject to her order. I think I notified Miss Lyon that the corn, fodder, etc., were there at her disposal, but she got none. I think I stated to the clerk that these articles were not measured. If I did so state, I did not then know they had been measured by the tenants."
2. That said referee committed error in his finding No. 12, to wit: that the deed from the defendant James M. Mayo to defendant W. T. Mayo, trustee, conveying the equitable interest of said James M. Mayo in the Williford tract of land, situated in the county of Nash, was made to hinder, delay and defeat creditors. The interest of the defendant J. M. Mayo in the tract of land referred to was covered by the deed, referred to in paragraph two of the referee's report, and when it is found as a fact, that said deed was not made to hinder, delay and defeat creditors. The only testimony upon this subject is found in the testimony of James M. Mayo, on pages 13 and 14 of the evidence, wherein said Mayo testified that, by an agreement with his wife, (425) he conveyed her the Lowe place, the Charlie Knight place, and his interest in the Williford place, in exchange for the Lyon tract, the property of his wife, and which she had joined with him to convey to W. B. Harper. The referee adopts the testimony of said Mayo in his 10th and 11th findings, and sustains this transaction as bona fide. The defendants submit that, at the time of docketing the judgment in favor of Sports Gibson, T. B. Braswell Son, and Rountree, Barnes Co., in the Superior Court of Nash County, the defendant J. M. Mayo had no interest in the said Williford land liable to sale under execution, or upon which a lien could be created by force of docketing said judgment. That there is no evidence to support the referee's finding. *Page 329 
3. The referee committed error in his 13th finding, wherein he finds the various sums in which James M. Mayo is indebted to his wife, F. L. Mayo. He should have found that James M. Mayo was justly indebted to his wife, F. L. Mayo: 1. In the sum of $1,396.27, with interest from 4 November, 1879, at the rate of 8 per cent, evidenced by note of that date. 2. In the sum of $1,439, with interest from 31 March, 1882, at the rate of 8 per cent, as evidenced by note of that date. 3. In the sum of $140.37, with interest from 17 March, 1883, at the rate of 8 per cent, as evidenced by note of that date. 4. In the sum of $700, with interest from 1 January, 1878, at 8 per cent, as evidenced by note of that date. 5. In the sum of $700, with interest from 1 January, 1879, at 8 per cent, as evidenced by note of that date. 6. In the sum of $700, with interest from 1 January, 1881, at 8 per cent, as evidenced by note of that date. 7. In the sum of $700, with interest from 2 January, 1882, at 8 per cent, as evidenced by note of that date. 8. In the sum of $700, with interest from 1 January, 1883, at 8 per cent, as evidenced by note of that date. 9. In the sum of $700, with interest from 1 January, 1884, at 8 per cent, as evidenced by note of that date. 10. In the sum of $700, with interest from 31 December, (426) 1885, at 8 per cent interest, as evidenced by note of that date. 11. In the sum of $700, with interest from 1 January, 1886, at 8 per cent interest, as evidenced by note of that date. 12. In the sum of $700, with interest from 1 January, 1880, at 8 per cent, as evidenced by note of that date.
The finding of the referee that the amounts represented by the first, second and third notes above mentioned were received by the said James M. Mayo, with the tacit consent of his wife, and with no express understanding or agreement to pay the same, is altogether unwarranted by the evidence. The referee assumes arbitrarily to accept or reject the testimony of James M. Mayo, the only witness upon the subject. (Reference is made to pages 17, 18, 19 and 20 of the testimony of James M. Mayo.) The referee committed further error in finding no express agreement was entered into between James M. Mayo and his wife F. L. Mayo, in respect to the rents of his wife's land, and wherein he found the said Mayo took possession of the said lands, and used and enjoyed the same and received the rents as a matter of course and right, and with no expectation of accounting to his said wife therefor. The defendants submit that said finding is arbitrary and unwarranted by the evidence.
The testimony of James M. Mayo, on page 17, is as follows: "The nine notes, each for $700, were executed at the time they were dated, and were for the rent of my wife's land, heretofore mentioned by me, that *Page 330 
being my agreement with her. I thought $700 was a fair rental value, and it was the price agreed upon between us." That there is no evidence to support the referee's finding.
4. That the referee has committed error in his 14th finding, wherein he finds that F. L. Mayo has received from James M. Mayo, in payment, more than enough to discharge her just demands against said James M. Mayo. He has committed error in not charging James M. Mayo with the amount of the nine rent notes, and the further error of not (427) allowing F. L. Mayo interest upon the first, second and third notes mentioned in paragraph 3.
The defendants except to the conclusions of law of the referee:
1. The first conclusion of law is unwarranted, either upon the facts contended for in the first exception hereof, or upon the facts as found by the referee.
2. The second conclusion of law is unwarranted, either upon the facts contended for in the second exception hereof, or upon the facts as found by the referee.
3. The defendants except to the correctness of the conclusion of law No. 3, for the reasons set forth in exception 3 hereof.
4. The defendants except to the referee's fourth conclusion of law.
This cause coming on to be heard upon the report of J. M. Mullen, Esq., referee (filed at Spring Term, 1888), and upon the exceptions to the same, filed both by the plaintiff and the defendants, and all the exceptions of the defendants being sustained (except only that in regard to the Williford land, which exception is withdrawn by the defendants), and all the exceptions of the plaintiff being overruled (except his third exception, in regard to the Edgecombe real estate, mortgaged by Jas. M. Mayo to Mary H. Lyon, now Mrs. Braswell, which exception is withdrawn), it is now, on motion of the defendants, ordered, adjudged and decreed by the court that said report shall be reformed in accordance with the said defendants' exceptions, and as thus reformed shall be confirmed and sanctioned by the court, the particulars wherein said report is reformed being as follows:
(a) Referee's 8th finding is to be changed so as to show that if, at the time of the execution of the mortgage by J. M. Mayo to Miss M. H. Lyon, it was the purpose and intention of said Mayo to remain in the possession of said Herbert place and personal property described (428) in said mortgage, and use, enjoy and consume the same, until the same was sold under said mortgage, she did not accept said mortgage with any knowledge of or concurrence in any unlawful intent on his part, but accepted the mortgage in good faith to secure a just debt. *Page 331 
(b) Referee's 13th finding is to be changed so as to show that Jas. M. Mayo was justly indebted to his wife, F. L. Mayo, (1) in the sum of $1,396.27, with 8 per cent interest from 4 November, 1879, evidenced by note of that date; (2) in the sum of $1,439, with 8 per cent interest from 31 March, 1882, as evidenced by note of that date, for distributive share in her father's estate; (3) in the sum of $140.37, with 8 per cent interest from 17 March, 1883, as evidenced by notes of that date, given for money collected on note F. L. Mayo held on J. T. Lyon; (4) in nine sealed notes, each for $700, given for the rent of the wife's land inherited from her father, and bearing date 1 January, 1878, 1879, 1880 and 1881, 2 January, 1882, 1 January, 1883, 1884, 31 December, 1885, and 1 January, 1886, bearing 8 per cent interest from their respective dates. The amounts represented by the first, second and third notes above mentioned were received by the said James M. Mayo (sums of money belonging to his wife), with the express agreement that he would repay the same. That the defendant J. M. Mayo occupied the lands of his wife, and with her knowledge received the rent therefrom during the nine years for which said $700 notes were executed. There was an express agreement between them, as shown by the said notes, that he would repay her said rents. That at the time of the assignment of the Ricks and Taylor notes, by said Mayo to his wife, he was indebted to her, upon three notes, one $1,396, one $1,439, one $140, with interest, in the sum of $4,132.25. That the defendant F. L. Mayo is entitled to interest on the three notes mentioned in the first exception, and numbered 1, 2, and 3, from the dates thereof, upon which there was due, 2 August, 1886, after allowing all credits thereon, and also (429) the payments on the Ricks and Taylor notes, the sum of $308.26. That in addition, he owes her the nine $700 notes, with interest as aforesaid.
It is further adjudged by the court as conclusions of law:
"1. That the mortgage executed by James M. Mayo to Mrs. Braswell, conveying the Herbert place, in Nash County, and certain personal property mentioned in the 8th finding of the referee, was not executed with any intention on the part of Mrs. Braswell that J. M. Mayo should remain in the possession thereof, and use, enjoy and consume the same, and therefore was not fraudulent.
"2. That the assignment of the Ricks and Taylor notes by J. M. Mayo, to his wife, F. L. Mayo, was not voluntary, but upon fair and full consideration.
"3. That the defendant F. L. Mayo is entitled to interest upon all her said notes against her husband. Now, upon motion of the defendants, it is adjudged that Mrs. J. C. Braswell is entitled to the fund of $118 deposited with A. Braswell to await the determination of this suit; and *Page 332 
further, that W. T. Mayo, trustee for F. L. Mayo is entitled to recover of the plaintiff whatever collections, if any, made by him on the Ricks and Taylor notes, and of A. H. Ricks and A. L. Taylor whatever may still be due on the judgment against them. The surplus in Williford v. Williford is $28.90, with 8 per cent interest from 1 August, 1887, and it is adjudged that the same shall be collected and held by the plaintiff as receiver.
"The costs of this action, and of all the actions consolidated into this one, to be taxed by the clerk, and to include a fee of seventy-five dollars, hereby allowed the referee, shall be paid by the plaintiff as receiver, and as far as he has the funds, but he is not responsible personally for the same; and whatever sum may still remain due on such bill of (430) costs shall be reported by the said receiver in the several actions brought by creditors of J. M. Mayo, as appears in the complaint."
The plaintiff does not assent to any part of this judgment, unless where it so distinctly appears in the same, and he especially objects to the judge's finding additional facts to those found by the referee. The plaintiff is allowed thirty days in which to file exceptions to this judgment, under Rule 7 of the Supreme Court. Judgment signed 19 November, 1888.
The plaintiff appealed from this judgment to the Supreme Court.
Plaintiff's exceptions filed under Rule 7:
1. That his Honor erred in stating on the face of said judgment that the value of J. M. Mayo's interest in the Williford land was nothing at the time of the assignment to W. T. Mayo, and that it was agreed that the matter should be eliminated from the controversy. The record in Williford v. Williford, a mere memorandum of which is filed by the referee as an exhibit, shows that there was a surplus after paying the debt for purchase money against J. M. Mayo.
2. That his Honor, while sustaining the findings of fact set forth in paragraph 8 of the referee's report, erred in not declaring that such facts rendered null and void the mortgage from J. M. Mayo to Mary H. Lyon, dated 2 February, 1886, made to secure a preexisting debt, even though there was no actual intent on the part of the mortgagee to defraud mortgagor's creditors.
3. That while it was admitted that said mortgagee had no actual intent to defraud said creditors, it is manifest from the evidence, and his Honor erred in not finding the fact, that she had notice that the mortgagor was greatly in debt, that his object was to take care of himself at the expense of his creditors, and that said mortgage was, therefore, null and void as to such creditors; or the report should have been recommitted, that this fact might be ascertained. *Page 333 
That if the above fact appeared to his Honor not to have been (431) distinctly found by the referee, and if participation in the fraud on the part of the said mortgage were necessary, then his Honor erred in not recommitting the report to the referee, that he might distinctly pass on that fact.
5. That his Honor erred in sustaining the defendants' third exception and declaring that there was no evidence to support the finding of facts set forth in the thirteenth paragraph of the referee's report. (See last part of said exception.)
6. That his Honor erred in not declaring (as the referee in effect declared) that J. M. Mayo did not execute the notes described in the defendants' third exception at the times when they purport to have been executed. The preponderance of evidence was against the finding of his Honor.
7. That if it appeared to his Honor that there was a discrepancy between the referee's findings (in paragraph 13 of his report), that J. M. Mayo was justly indebted to his wife on 1 January, 1886, in the sums $1,000, $1,439, and $140.37, and that he received these sums from her long before he became insolvent, and without any agreement between them or expectation on his part of accounting to her for the same, then his Honor erred in not recommitting the report to the referee to pass clearly on the facts.
8. That if it appeared to his Honor that the referee had not definitely passed on the fact, alleged in the latter part of the 11th paragraph of the consolidated complaint, to wit, that the transfer of the Ricks and Taylor notes was made with intent to hinder, delay and defraud creditors, then the report ought to have been recommitted, that said facts might be passed upon.
9. That his Honor erred in not declaring that the referee's finding of facts stamped the transfer made by J. M. Mayo to his wife in payment of alleged indebtedness, with fraud, and that, as that made the transfer void in toto, his (the referee's) allowing her to retain (432) to the extent of collections, which she had made and appropriated before the plaintiff effected a lien, was not an error of which she could complain.
10. That his Honor erred in overruling the plaintiff's 4th exception, and it is insisted that he ought to have declared that not even the principal money received by J. M. Mayo from his wife constituted valid, enforceable indebtedness in her favor as against the claims of her creditors, and that it ought to have been found as a fact that she was a party to an agreement that he should use her money as his own, with no expectation on the part of either, at the time he received it, that it should be accounted for. *Page 334 
11. That his Honor erred in overruling the plaintiff's exception. Mrs. Mayo should have been directed to refund so much of the money received by her from him as is necessary to satisfy the claims of creditors.
12. That his Honor erred, also, in not declaring that the nine notes, which J. M. Mayo claimed to have executed to his wife, each for $700 with interest, for the rent of her land, were fraudulent, fictitious and void.
13. That his Honor erred in not declaring that, in any event, J. M. Mayo, under the circumstances which existed in this case, was not liable to account for the income of his wife's separate estate, under The Code, sec. 1837, and that such income did not constitute valid, enforceable indebtedness in her favor against him, to the prejudice of creditors.
14. That his Honor erred in finding that there was no express promise by J. M. Mayo to repay to his wife the money received from her, and also to pay her each year $700 for the rent of her land.
15. That in any event he ought to have found that $700 was greatly more than the annual value of said land.
16. That his Honor erred in finding that, at the time of the transfer of the Ricks and Taylor notes by J. M. Mayo to his wife, he was indebted to her in the sum of $4,132.25.
(433) 17. That his Honor erred in sustaining the defendants' 4th exception, and in overruling the referee's 14th finding of fact.
18. That his Honor erred in declaring that the assignment of the Ricks Taylor notes to F. L. Mayo by J. M. Mayo was not voluntary, but upon full and fair consideration.
19. That his Honor erred in adjudging that F. L. Mayo was entitled to collect interest upon the three notes specified in the defendants' third exception.
20. That his Honor erred in his adjudication touching the fund of $118 deposited with A. Braswell to await the determination of this suit. It should have been ordered that this fund be paid over to the receiver.
21. That his Honor erred in his adjudication in regard to the judgment obtained by the receiver against Ricks Taylor. The receiver, who has collected nothing on said judgment, should have been authorized to collect the same, and apply the proceeds to the payment of judgment creditors.
22. That his Honor erred in directing costs to be taxed against the receiver personally, under The Code, sec. 535 (1). Such costs should have been chargeable on the sum of $118 and the judgment against Ricks Taylor. *Page 335 
23. That his Honor erred in overruling the plaintiff's first exception.
24. That his Honor erred in overruling the plaintiff's second exception. He should have reversed the referee's finding, and declared that the conveyances to V. W. Land were made with intent to hinder, delay and defeat creditors.
25. That his Honor erred in this: He had no right to find additional facts — facts that the referee had not passed on at all. For instance, it is alleged in the complaint that the Ricks Taylor notes were transferred by J. M. Mayo to his wife with intent to defraud creditors, and the defendants, J. M. Mayo and wife, contend that he executed to her notes described in the defendants' third exception. (434)
It may be that these facts are not passed upon by the referee at all. If so, the report should have been recommitted to him.
On the argument counsel revived the discussion as to the right of this Court to review findings of fact, made by a referee or judge, and also questioned the power of the judge below to modify the report of the referee upon the facts. It is necessary, therefore, to collate, rearrange and reiterate some of the settled rules that define the duties and powers, respectively, of the referee, the trial judge and the appellate court in disposing of references by consent.
This is a mode of trial selected by the parties, who, in agreeing to it, are deemed to have waived their constitutional right of trial by jury. Const., Art. IV, sec. 13. Sections 422 and 423 of The Code are, so far as is material to the decision of the questions before us, the same as sections 246 and 247 of the Code of Civil Procedure (including the provision, that "the report shall have the effect of a special verdict"), and therefore our decisions, running through twenty years, have been constructions of the same language.
The referee must state in his report his findings of fact and law separately, and when the judge, who hears exceptions to the report, makes no special finding of fact, it is presumed that he adopts those of the referee which are considered prima facie correct. Barcroft v. Roberts,91 N.C. 363; Green v. Jones, 78 N.C. 265.
But in the exercise of his revisory power, the judge may "set aside, modify, or confirm, in whole or in part, the report of the referee, and the appellate jurisdiction attaches to his rulings in matters (435)of law only." Vaughan v. Lewellyn, 94 N.C. 472.
"His findings of fact, upon appeal to this Court, are conclusive, and his conclusions of law upon them alone are reviewable." Barcroft v. *Page 336 Roberts, 91 N.C. 363; Green v. Castleberry, 70 N.C. 20; Klutts v.McKenzie, 65 N.C. 102; Armfield v. Brown, 70 N.C. 27; Patterson v.Wadsworth, 89 N.C. 407.
One valid objection may be raised to the findings of the referee adopted by the judge, either directly or by failing to modify them, or to those of the judge substituted for the referee's; but it raises in reality only the questions of law, whether there is any evidence to support the conclusionsof fact.
Where no such objection is made, and, in apt time, the findings of the judge, whether made or adopted, are final and cannot be reviewed in this Court, and if, upon hearing such exception when taken, it appears in the appellate court that there is any evidence to sustain the finding, it will be "deemed conclusive." Usry v. Suit, 91 N.C. 406; Reaves v. Davis,99 N.C. 425.
The Supreme Court, under the Constitution of 1868 (Art. IV, sec. 10), had no jurisdiction to try any "issue of fact as distinguished from a question of fact." Issues of fact were defined by the court to mean "such matters of fact as are put in issue by the pleading, and a decision of which would be final and conclude the parties upon the matters in controversy in the issue." Heilig v. Stokes, 63 N.C. 612.
This cause, constituted as it is in this Court, is certainly not one in which the Supreme Court could have decided the issues of fact, before the Constitution of 1868 was ratified, according to the practice as it then existed.
Though this is a cause that would have been cognizable in a court of equity then, it presents issues of fact which the parties have elected to try by referee in place of a jury trial, and the evidence does not (436) come to this Court in such shape as to require us to review it or even to determine whether, with or without the aid of legislation, the case might have been so presented on appeal as to require us, in the exercise of the jurisdiction conferred by the amendment of 1877, to decide the issues of fact involved. Jones v. Boyd, 80 N.C. 258;Coates v. Wilkes, 92 N.C. 376.
Having stated the foregoing general principles applicable to the consideration of trial by referee, we will find that some of the exceptions which appear in the record will fall within the rules laid down, and be disposed of without directly discussing them at any length.
The following were all of the exceptions filed by the plaintiff in the court below:
1. The plaintiff objects to the referee's finding of fact No. 4, as to the amount of indebtedness still due from Mayo after transferring, or attempting to transfer, all his property. *Page 337 
2. The plaintiff objects to the referee's sixth finding of fact as being contrary to the evidence.
4. The plaintiff objects to the referee's finding of fact, and insists that not even the principal money there mentioned constitutes valid enforceable indebtedness in favor of Mrs. Mayo as against the claims of creditors; our objection being mainly this, that he ought to have found that Mrs. Mayo was a party to the agreement which he mentions.
5. The plaintiff objects to the report because the referee did not direct Mrs. Mayo to refund to her husband so much of the money received by him from her as is necessary to satisfy the claims of creditors.
Without considering whether his Honor ultimately modified the findings of the referee, covered by the first, second and third exceptions, we will see at a glance that they were all based on the objection that the facts were found against the weight of evidence, and could serve no purpose unless they could have induced the judge below to set that portion of the report aside, and find the facts on the points mentioned for himself, and whether he did or did not make any (437) alteration, his decision is not reviewable.
The fifth exception is in form subject to an objection that has frequently been held to be fatal. It is not sufficiently specific — does not point out any conclusion of law stated by the referee in his report, at which the exception is aimed, nor the precise error in the referee's ruling. Suit v. Suit, 78 N.C. 272.
The exception in that case was, "that the referee ought to have found as a conclusion of law, that the plaintiff recover nothing." Here the ground is, "because the referee did not direct Mrs. Mayo to refund to her husband so much of the money received by him from her as is necessary to satisfy the claims of creditors." The only difference is, that in this case the exception raises objection in general terms to the final disposition of one of several funds in controversy, and there it was to the final conclusion as to the only matter involved in the action. We concur with the judge in overruling this with the three other exceptions. Currie v. McNeill,83 N.C. 176; Whitford v. Foy, 71 N.C. 527.
Embodied in the judgment of the court, we find but one exception, which is as follows:
"The plaintiff does not assent to any part of this judgment, unless where it distinctly appears in the same, and he especially objects to the judge's finding additional facts to those found by the referee."
The withholding of assent cannot be treated as a specific exception to the whole judgment, just as an exception to a whole charge has been held not sufficient, even where the counsel after the term filed their assignments of error, pointing out the particular objections. Bost v. Bost,87 N.C. 477. *Page 338 
In Green v. Castleberry, supra, Justice Reade, avowing for the Court the purpose to give sections 246 and 247 (C. C. P.), such a construction as would best subserve "the convenient administration (438) of justice," and to settle the practice, formulated ten rules, governing trials by referee, that clearly "blazed the way" and constitutes the substratum of the principles already stated; but, probably because of the fact that the judges usually adopted the findings of referees, he did not indicate when or how an appellant should enter the exception, that there was no evidence to support a finding of fact made by a judge revising a referee's report.
Counsel are required to present such objections to the judge's rulings as constitute grounds of motion for new trial during the term at which the verdict is rendered, in order to give the judge an opportunity to set aside the verdict, if convinced that there is error, because he has no power to do so after the end of the term, and exceptions on that ground made after the term are not considered.
The objection, that there is no evidence to sustain one of the conclusions of fact stated by a judge on revising a referee's report, should be likewise made during the term, when the cause is heard, in order to enable the judge to modify his findings, if any error is pointed out, and we will not consider exceptions based upon such alleged errors, filed for the first time within ten days, under Rule 7 of this Court.
The plaintiffs, it seems, filed, under Rule 7, twenty-five exceptions, which we find in the record, and which ought to have been printed, instead of the assignment of errors remodeled and rearranged, that appears in the printed record. As the argument was addressed to the printed exceptions, or what purported to be exceptions, we find greater difficulty in reviewing the points properly presented for our consideration. Disregarding the order observed by the plaintiff, we address ourselves first to the twelfth exception. His Honor, after finding that, though J. M. Mayo occupied his wife's lands for nine years, and with her knowledge received the rents therefrom, and that there was an express agreement on his part to account to her for the rent, which (439) was afterwards set forth in the nine notes for $700 each, declares and adjudges in effect that the notes constitute valid indebtedness on the part of the husband to his wife. It was insisted, that the wife's power to contract with her husband in reference to the rents of her separate estate was restricted by the provision of section 1837 of The Code, that "no husband who, during coverture (the wife not being a free trader, under this chapter), has received, without objection from his wife, the income of her separate estate, shall be liable to account for such receipt for any greater time than the year next preceding the date of a summons issued against him in an action for such income, or next *Page 339 
preceding her death." It is settled that none of the other sections of chapter 47 of The Code are to be construed as limiting the wife's power to acquire property, by contracting with her husband or any other person, but only to restrain her from, or protect her in, disposing of property already acquired by her. Kirkman v. Bank of Greensboro, 77 N.C. 394; George v.High, 85 N.C. 99; Dula v. Young, 70 N.C. 450.
But section 1837 does contain the restriction, that the liability of the husband for rents received, "without objection" on the part of the wife, shall be limited. The wife must have "knowledge" in order to enter into any contract, and the fact that there was an express agreement that ultimately assumed the form of notes precludes the possibility of assent, and implies objection on her part to the receipt of the rents, unless upon a promise to account for them.
The defendant James M. Mayo, on 22 October, 1885, being indebted to his niece, Mary H. Lyon (now the wife of J. C. Braswell), for her distributive share in the estate of her grandfather, as he supposed, in the sum of $1,500, executed to her on that day a mortgage conveying a tract of land, known as the Herbert tract, and also certain personal property on said place, to secure the payment of a note for $1,500, executed contemporaneously as evidence of his (440) indebtedness to her. He continued to live on said place and to use the personal property conveyed in the mortgage (some of which was consumed in the use) until about the first of the year 1887, when the Herbert place was sold under a prior mortgage, and the proceeds were insufficient to satisfy the debt secured by it.
The $118 is the fund realized by a sale of the said personal property in February, 1888, and deposited with A. Braswell to await the decision in the case.
His Honor finds that the said mortgage deed was not executed with any intent on the part of Mary H. Lyon (now Mrs. Braswell) that Mayo should remain in possession thereof, and use, enjoy and consume the same, and, therefore, was not fraudulent. The plaintiff's exception (No. 2) is based on the ground that there was error in the holding that the mortgage deed, made to secure a preexisting debt, was not void because the mortgagee did not participate in the fraud. The deed was executed to secure a valid preexisting debt of $1,500, which is held to be a valuable consideration.
A mortgage deed executed (as this was) for a valuable consideration, and with no fraudulent intent on the part of the mortgagee, is valid, though the mortgagor did execute it for the purpose of defrauding his creditors.Savage v. Knight, 92 N.C. 493; Lassiter v. Davis, 64 N.C. 498; Beasleyv. Bray, 98 N.C. 266; Means v. Dowd, 128 U.S. 273. *Page 340 
This principle is sustained by the reasoning in the cases cited, and disposes of the twentieth exception, relating to same subject.
The referee found that J. M. Mayo justly owed his wife, F. L. Mayo, these notes mentioned in his report. His Honor adopted his finding, and allowed her interest on the unpaid notes. We can discover no error in this, and the exception points out none.
Exception 19 is overruled. The judge finds that when the Ricks 
Taylor notes were assigned by J. M. Mayo to his wife, he was indebted to her in a large amount upon these notes, as set forth in the (441) judgment, and subsequently he holds that said assignment was not voluntary.
His finding of fact was conclusive; his legal deduction naturally followed from the finding. Therefore, we cannot sustain either exception 18 or 21, because the assignment was not voluntary, if the consideration was a large debt, as found, and if made upon consideration it is valid, and the money collected on the judgment against Ricks Taylor should be paid over to W. T. Mayo, trustee, for the benefit of F. L. Mayo.
All the other exceptions filed by counsel, under Rule 7, we think are amenable to the objection that they ask us to review findings of fact which, under the rules already stated, are conclusive, and we cannot, therefore, sustain any of them.
No error. Affirmed.
Cited: Howerton v. Sexton, 104 N.C. 83; Woodruff v. Bowles,ibid., 211; Fertilizer Co. v. Reams, 105 N.C. 291; Mfg. Co. v. Brooks,106 N.C. 113; Stephenson v. Felton, ibid., 121; Joyner v. Stancill,108 N.C. 155; Osborne v. Wilkes, ibid., 667; Smith v. Hicks, ibid., 251;Blake v. Blackley, 109 N.C. 264; Walker v. Long. ibid., 514; Tilley v.Bivens, 110 N.C. 344; Rouse v. Bowers, 111 N.C. 367; Comrs. v. Tel.Co., 113 N.C. 221; McEwen v. Loucheim, 115 N.C. 351; Cotton Mills v.Cotton Mills, ibid., 485; Light Co. v. Light Co., 116 N.C. 121; Wolf v.Arthur, 118 N.C. 899; Sydnor v. Boyd, 119 N.C. 485; S. v. Harris,120 N.C. 578; Dunavant v. R. R., 122 N.C. 1001; Holt v. Johnson,128 N.C. 68; Faircloth v. Borden, 130 N.C. 267; Lewis v. Covington, ibid., 542; Ramsey v. Browder, 136 N.C. 253; Comrs. v. Erwin, 140 N.C. 194;May v. Getty, ibid., 317; Williams v. Hyman, 153 N.C. 167;S. v. Bailey, 162 N.C. 585; Mfg. Co. v. Lumber Co., 177 N.C. 407;S. v. Jackson, 183 N.C. 701. *Page 341 
(442)