CLARK, C. J., concurring. *Page 356 
Some of the essential facts are set forth in the complaint of plaintiff, and are as follows:
"1. That she and the defendant, M. O. Holton, were married on 17 May, 1903, and by said marriage there have been born five children, the oldest of which is now 16 years and the youngest about 3 years of age.
"2. That the defendant owns several small tracts of land situate in the counties of Pamlico, Craven and Beaufort, which land will be hereinafter described.
"3. That the defendant, without any just cause or provocation, unlawfully and wrongfully abandoned plaintiff and said children on 1 April, 1922, and plaintiff has heard nothing from said defendant since his abandonment, except that he has departed from the State and when last heard of by plaintiff was living in the State of Georgia.
"4. That plaintiff is unable to cultivate to advantage any of the lands owned by the defendant, and she is greatly in need of support for herself and five minor children.
"5. That the plaintiff has no means of support whatever, and she has been advised, informed, and believes that the land and other property owned by the defendant may be subjected by the court to a lien for the necessary subsistence of herself and five minor children.
"6. That on the 2d day of September, 1922, warrant of attachment was duly issued by the clerk of the Superior Court of Pamlico County, directing and commanding the sheriffs of Pamlico, Craven, and Beaufort counties to attach and safely keep all the property of the said M. O. Holton, or so much thereof as might be sufficient for a reasonable subsistence for plaintiff and her five minor children.
"7. That the said sheriffs have made the following inventories, certificates and returns to the clerk of the Superior Court, Pamlico County, on said attachments:
"Inventory of Land — Pamlico County.
"First Tract — Containing 12 acres, more or less, being the same land conveyed by Brazilla Horton and wife to Miffin O. Holton, 6 April, 1921, recorded in register of deeds' office, Pamlico County, Book, 78, p. 2.
"Second Tract — Being the same land conveyed by Barzilla Holton and wife to Miffin O. Holton, 8 February, 1904, recorded in register of deeds' office, Pamlico County, Book 36, p. 413, containing 75 acres, more or less. *Page 357 
"Third Tract — Being the same land conveyed by C. D. Holton and wife to Miffin O. Holton and Lucy G. Holton, wife of defendant, M. O. Holton, 30 August, 1904, recorded in register of deeds' office, Pamlico County, Book 37, p. 265.
"Craven County.
"Fourth Tract — Being the 21-acre tract conveyed by Brazilla Holton and wife to Miffin O. Holton, 6 April, 1921, recorded in register of deeds' office, Pamlico County, Book 78, p. 1, and register of deeds' office, Craven County, Book 246, p. 2, and being the first tract conveyed in said deed. Excepting from this tract about one acre on the northern end thereof, which is situated in Beaufort County, North Carolina.
"Fifth Tract — Bounded on the north by the county lines of Craven and Beaufort, and on the west by M. O. Holton, being the undivided right, title and interest of defendant, M. O. Holton, in said tract, known as the Tunstall undivided land, owned in common by the defendant, M. O. Holton, and R. C. Holton et als.
"Beaufort County.
"Sixth Tract — Containing 1 1/2 acres, more or less, being the same land conveyed by Willis G. Toler and wife to Miffin O. Holton, recorded in register of deeds' office, Beaufort County, Book 201, p. 517.
"8. That four of the defendant's abandoned minor children now need to be in school and are greatly in need of clothing, books, and proper food for the nourishment of their bodies, and many other things; and the plaintiff herself is greatly in need of money with which to buy the necessary comforts for the support of herself and five minor children.
"Wherefore, plaintiff demands judgment that she be allowed such a sum from the date of abandonment of her by the defendant, her husband, to the present date, and for a future allowance per month as she may show to the court to be the necessary subsistence for herself and her five minor children; also, for a necessary allowance, for a reasonable counsel fee, for cost, and any other relief to which she may show herself entitled."
The record shows that summons was issued and warrants of attachment were properly obtained in accordance with law. The court below, at November Term, 1922, rendered judgment, finding that the proceeding was regular. The judgment rendered also says:
"And it appearing to the court that the plaintiff is the wife of defendant, and that the defendant abandoned plaintiff, his said wife, on the 1st day of April, 1922, since which time he has contributed nothing towards the support of his said wife and five minor children, and that *Page 358 
the defendant has fled from the State, and when last heard of by plaintiff was residing in the State of Georgia: It is, therefore, ordered and adjudged by the court that the defendant pay to the plaintiff, per month, $50, from the 1st day of April, 1922, as a necessary subsistence for herself and five minor children, and $100 for expenses and counsel fee.
"It is further ordered and decreed that this judgment, to the extent of monthly payments herein decreed during the life of this decree shall constitute a lien on all the real and personal property of the defendant, and the said defendant is hereby ordered and directed to execute a deed of trust conveying all his interest in lands in Pamlico, Craven, and Beaufort counties to C. D. Holton, trustee for plaintiff, to secure the performance of this decree; and in default of the execution of said deed of trust within ten days from the day, 21 November, 1922, then this decree shall operate as conveyance to said C. D. Holton, trustee, with the power of sale, and shall be the duty of said trustee, after due advertisement under the orders and directions of the court, to sell so much of said lands as may be necessary to satisfy this decree.
"In case of default in the payments herein required to be made by the defendant, then said trustee is hereby authorized and directed to apply either to the resident judge or judge riding the Fifth Judicial District for an order for the sale of the lands hereinafter described, or so much thereof as may appear to the court to be necessary for the payment of this decree to date.
"It is hereby ordered by the court that this judgment shall constitute a lien on the following described tracts of land."
The same are set forth in the complaint, before mentioned, except the fourth tract.
C. D. Holton, trustee, at Fall Term, 1922, of the Superior Court of Pamlico County, before Calvert, J., obtained an order of sale of the "first," "fifth," and "sixth" tracts of land set forth in the complaint before mentioned. The proceeds derived from the sale to be applied in monthly payments of $50 to plaintiff, and counsel fees, in compliance with former judgment. The trustee made sale of the "first tract" and made report as required by the order. The land brought $675, and the sale was confirmed.
C. D. Holton, trustee, filed application before Grady, J., holding court in Pamlico County, at Bayboro, N.C. 10 May, 1923, to sell the land hereinafter set forth. This application sets forth in detail the sale of the "first tract," amount it brought, and the application of the fund, showing that, after paying expenses of sale, attorney's fee, and reasonable subsistence of $50 per month to plaintiff, that on 1 May, 1923, there was only a balance of $10 to be credited on judgment of allowance *Page 359 
to plaintiff of $50 for the month of May, 1923. The application was to sell the land to pay the $50 monthly allowance. In the application and order of sale tendered by C. D. Holton, trustee, to Grady, J., to sign, was to sell the following described land, same being the "second tract," set forth in the complaint, but described by metes and bounds as follows:
"Beginning at a gum standing on the east side of Upper Broad Creek, in or near the month of a branch, and runs thence south 60 degrees east 125 poles to a lightwood stump on the east side of Spight's Road (Simon's corner); thence south 64 degree west 126 poles to a gum at the head of a branch; then with said branch to the run of Broad Creek; then up said creek to the beginning; containing about 75 acres of land, being the same land conveyed by Barzilla Holton and wife to Miffin O. Holton and wife, dated 8 February, 1904."
The application for the sale of this tract of land, and the order tendered by plaintiff to the court below to sign, both allege, "being the same land formerly known as the William H. Holton land and the same land conveyed by Barzilla Holton and wife to Miffin O. Holton and wife (italics ours), dated 8 February, 1904." The complaint indicates that the deed was made to Miffin O. Holton. The present application and order tendered by plaintiff for the court to sign was to sell the land owned by plaintiff anddefendant, husband and wife.
The court below refused to sign the order to sell this tract of land, and from the refusal of the court plaintiff excepts and appeals to this Court.
Certain creditors, who had attached the lands of defendant after the attachment of plaintiff, objected to the order to sell the before-mentioned tract of land.
From the record we take it that the deed to the land was made to husband and wife, plaintiff and defendant in this cause. The application and order tendered the court so states. The court below, from the application and order tendered, made no error in refusing to sign the order.
"If any husband shall separate himself from his wife and fail to provide her and the children of their marriage with the necessary subsistence, according to his means and condition in life, or if he shall be a drunkard or spendthrift, or be guilty of any misconduct or acts that would be or constitute cause for divorce, either absolute or from bed and board, the wife may institute an action in the Superior Court of the *Page 360 
county in which the cause of action arose, to have a reasonable subsistence and counsel fees allotted and paid, or secured to her from the estate or earnings of her husband. Pending the trial and final determination of the issues involved in such action, and also after they are determined, if finally determined, in favor of the wife, such wife may make application to the resident judge of the Superior Court or the judge holding the Superior Courts of the district in which the action is brought, for an allowance for such subsistence and counsel fees, and it shall be lawful for such judge to cause the husband to secure so much of his estate or to pay so much of his earnings, or both, as may be proper, according to his condition and circumstances, for the benefit of his said wife and the children of the marriage, having regard also to the separate estate of the wife. Such application may be heard in or out of term, orally or upon affidavit, or either, or both. No order for such allowance shall be made unless the husband shall have had five days notice thereof; but if the husband shall have abandoned his wife and left the State, or shall be in parts unknown, or shall be about to remove or dispose of his property for the purpose of defeating the claim of his wife, no notice shall be necessary. The order of allowance herein provided for may be modified or vacated at any time, on the application of either party or of any one interested. In actions brought under this section, the wife shall not be required to file the affidavit provided in section 1661, but shall verify her complaint as prescribed in the case or ordinary civil actions." C. S., ch. 30, sec. 1667; Public Laws 1921, ch. 123. Counsel fees allowed by Public Laws 1921, ch. 123.
"An attachment against the husband's land will lie in favor of the wife, abandoned by him, for a reasonable subsistence or allowance adjudged by the court, under the implied contract that he support and maintain her, under the statute declaring and enforcing it, and under the order of court and attachment of the husband's land is basis for the publication of summons. The wife's inchoate right to alimony makes her a creditor of her husband, enforceable by attachment, in case of his abandonment, which puts every one on notice of her claim and her priority over other creditors of her husband." Walton v. Walton, 178 N.C. 73; White v. White, 179 N.C. 599;Anderson v. Anderson, 183 N.C. 141; Moore v. Moore, 185 N.C. 332.
From the facts appearing in this case, the land sought to be sold was deeded to husband and wife. It is well settled in this State that when land is conveyed or devised to a husband and wife, nothing else appearing, they hold by entirety, and, on the death of either, the survivor gets the entire estate in the land." Turlington v. Lucas, at this term (ante 283). *Page 361 
Neither the interest of the husband nor that of the wife can be sold under execution, so as to pass away title during their joint lives or as against the survivor after the death of one of them. Bruce v. Nicholson,109 N.C. 204; Hood v. Mercer, 150 N.C. 699; Bank v. McEwen, 160 N.C. 414;Turlington v. Lucas, supra.
The interest and control of the husband during the existence of the joint estate or the joint lives of the two parties is well illustrated in what is known as "the flume case." Dorsey v. Kirkland, 177 N.C. 520.
"But while at common law neither the husband nor the wife can deal with the estate apart from the other, or has any interest which can be subjected by creditors so as to affect the right of the survivor, yet subject to this limitation, the husband has the right in it, which is incident to his own property. He is entitled during the coverture to the full control and the usufruct of the land to the exclusion of the wife." West v. R. R.,140 N.C. 620.
In the property of the husband, not held as husband and wife by entireties, with the right of survivorship, the husband cannot, under C. S., 1667, claim homestead or personal property exemptions.
In Anderson v. Anderson, 183 N.C. 143, Adams, J., says that the allowance made under C. S., 1667, is not such a "debt" as would give the husband the right to claim his homestead or personal-property exemption.
It is settled law in this State that the husband has the right of possession of the entire property and to take all the profits of the estate. The court has the right to assign possession to the wife of a reasonable part of his estate for the support of herself and children, under the statutes of 1868-69, ch. 123, now C. S., 1668, which provides: "In all cases in which the court grants alimony by the assignment of real estate the court has power to issue a writ of possession when necessary, in the judgment of the court, to do so." This statute seems to have been passed with a view to cases of this kind where the husband has abandoned his wife and gone to parts unknown.
In Crews v. Crews, 175 N.C. 168 (overruling Skittletharpe v.Skittletharpe, 130 N.C. 72), the Court held, in effect, that the judge may direct monthly payments from husband's estate, which includes his income from property and his labor, considering his capacity to work. If the realty held in entireties is the sole property of the husband during his life, the proceeds therefrom can be directed by the court to be paid by him for the subsistence of his wife and children, under C. S., 1667, which provides that "the wife may institute an action in the Superior Court of the county in which the cause of action arose to have a reasonable subsistence and counsel fees allotted and paid or secured to her from the estate or earnings of her husband." Real estate held by the *Page 362 
husband by entireties is his real estate, for his life at least, and the income thereof is his earnings from which such allotment can be ordered to be paid. This is not a "debt," in the ordinary sense of the word, as is said by Adams, J., in Anderson v. Anderson, supra, but an appropriation or allotment under the police power, which protects the wife and children from indulgence and becoming a charge upon the public when the husband is in actual possession of realty, under whatever title, if by means thereof he receives earnings or income. The possession thus assigned to the wife under C. S., 1668 may be rented out to produce an income, or the court can order the rent, as it shall accrue and become personalty, to be applied to the subsistence of the wife and children. It is the contingency of the wife becoming owner if she becomes the longest liver, which alone would prevent a sale of the property.
Hoke, J., in McKinnon v. Caulk, 167 N.C. 411, said: "Our statute having abolished all survivorship in fee-simple estates, except this and estates of trustees without beneficial interest (Revisal, secs. 1579-1580), the owners should thereafter hold as tenants in common. It is not a satisfactory answer to this position that, the right of survivorship having attached at the creation of the estate, it could not be divested by a decree of divorce subsequently granted. The very question presented is, whether this right of survivorship would attach as an inseparable incident or ownership, or was it dependent upon the unity of person between the two? And our conclusion on this question, drawn from the history and nature of the estate, is, we think, in accord with right reason and the great weight of authority," quoting several cases, and especially from Stelz v. Shreck,128 N.Y. 263, where Peckham, J. (subsequently of the United States Supreme Court bench), held that, as an absolute divorce terminates the marriage and unity of persons just as completely as death itself, the "natural and logical outcome of such a state of facts (absolute divorce) is that the tenancy by entirety is severed, and, this having taken place, each takes his or her proportionate share as tenant in common without survivorship." The whole subject is fully discussed and disposed of byHoke, J., in that case (McKinnon v. Caulk), which is cited and approved inFinch v. Cecil, 170 N.C. 75. In Freeman v. Belfer, 173 N.C. 586,McKinnon v. Caulk was said to be in accordance with holdings in all other States, except two, upon the point that an absolute divorce dissolved the entireties and made the parties tenants in common. This was cited with approval by Walker, J., in Moore v. Trust Co., 178 N.C. 126, where he says: "A divorce a vinculo, as it destroys the unity, will convert the estate by entireties into one in common." See Turlington v. Lucas, supra.
As thus modified, the judgment will be affirmed.
Modified and affirmed. *Page 363