The following judgment was rendered in the court below: "This cause coming on to be heard before the undersigned judge of the Superior Court at the 7 January, 1935, Term of the Superior Court of Forsyth County, and being heard by the court upon the pleadings read as affidavits, upon oral evidence, and upon other affidavits submitted and read to the court, and the court having heard the arguments of counsel upon the issues of law arising, makes the following findings of fact and conclusions of law: That the plaintiff Ruth Hatcher Reynolds and the defendant W. N. Reynolds II were duly married in Washington, D.C., on 8 August, 1932, and lived together as husband and wife until the latter part of May, 1933. That during the month of May, 1933, the mind of the defendant W. N. Reynolds II became so affected that it was impossible for the plaintiff to live with him, and that since that date she has been compelled, by reason of his mental condition, to live separate and apart from her said husband. That at about the time of the separation of the plaintiff and the defendant W. N. Reynolds II, it was necessary to place him in institutions for treatment, where the physicians pronounced his ailment as dementia praecox; that during the greater part of the time since May, 1933, the defendant W. N. Reynolds II has been at Craig House at Beacon, in the State of New York, said Craig House being an institution for the treatment of persons with mental diseases. That prior to that time the defendant was confined for a time in Tucker Sanitarium in Richmond, Virginia. That all of the *Page 256 
physicians that have had charge of the said W. N. Reynolds II agreed that his disease is dementia praecox, and that it is impossible for his mental condition to improve. The court, therefore, finds as a fact that since May, 1933, the defendant W. N. Reynolds II has been suffering from dementia praecox, that he is still in that condition, and that the condition is incurable. That the defendant W. N. Reynolds II was domiciled, at the date that he became incompetent, within the State of Virginia, and that his domicile is still in that state; that at proceedings duly held in the Circuit Court of Patrick County, on 4 September, 1934, he was duly adjudicated insane, the court hearing evidence, and finding the said W. N. Reynolds II insane; that the defendant Annie D. Tompkins, mother of W. N. Reynolds II, was appointed by the said Circuit Court of Patrick County committee for W. N. Reynolds II, both for his person and his property, and that she has acted continuously since the said proceedings and is now acting as committee for W. N. Reynolds II in the State of Virginia. That the plaintiff was born on 26 August, 1908, and is in good health; that the defendant W. N. Reynolds II was born on 8 July, 1910, and that his physical condition is good; that the expectancy of continued life of both the plaintiff and the defendant W. N. Reynolds II is more than 38 years from the date of this hearing, and the court finds as a fact, considering the health, constitution, and habits of both the plaintiff and the defendant W. N. Reynolds II, the expectation of continued life of both of them will extend for beyond 23 November, 1941. That the plaintiff is without property and has no means of support other than such allowances as the court may make to her out of the property of her husband.
"That on or about 5 August, 1922, Harbour H. Reynolds, the father of the defendant W. N. Reynolds II, executed and delivered to the defendant Wachovia Bank and Trust Company, as trustee, two certain trust agreements conveying to the said trustee upon the trusts therein set out certain personal property consisting primarily of stocks in the R. J. Reynolds Tobacco Company, a corporation of the State of New Jersey, but having its principal business office and manufacturing plants in Winston-Salem, Forsyth County, North Carolina; that the Wachovia Bank and Trust Company, trustee, accepted the said trusts and has held the property conveyed to it by the said trust agreements, and has acted as trustee thereunder and is still acting as such trustee at the date of this hearing.
"That of the said trust agreements the following provisions defining the duties of the trustee and the rights of the beneficiaries are respectively as follows: `(1) To keep the principal of the trust estate invested in high-grade securities, including bonds of the United States or any state or political subdivision thereof, or bonds and notes secured by *Page 257 
first mortgages on real estate, or such stocks and bonds as shall be approved from time to time by the trust committee of the said trustee. The trustee shall have power to collect, sell, invest, reinvest, manage, and control in such manner as it shall deem best any of the property so held by it in trust. (2) To collect, receive, and receipt for all income, gains, and profits from and upon the property held in trust, and after deducting all taxes, fees, expenses, and commissions paid or incurred by the trustee in the administration and preservation of the trust estate, apply or pay over the said net income in the manner hereinafter provided: (a) To pay one-fourth of the net income from and upon the property held in trust in equal monthly or quarterly installments to my wife, Annie Dobbins Reynolds, during her lifetime. To pay so much as may be necessary and required for the proper support and education of my children, of the remaining net income derived from the property held in trust to the grantor during his lifetime as guardian for said children. As and when my children arrive at the age of twenty-one, to pay over so much of the net income of their share of the property held in trust as is required for their proper support and education. Any part of the net income not so paid to such children shall be invested and added to the principal of their shares. When my youngest child shall arrive at the age of twenty-seven, or if he or she shall die prior to arriving at that age, then at the time he or she would have become twenty-seven, to pay over to my children then living, the child or children of any child that may then be dead to represent their parent, three-fourths in value of the property held in trust, share and share alike, discharged of this trust. Upon the death of my wife, her share, a one-fourth interest in the property held in trust, shall be added to the share of the children, and either the income or the principal distributed to said children in accordance with the terms set forth.'
"`(1) To keep the principal of the trust estate invested in high-grade securities, including bonds of the United States or any state or political subdivision thereof, or bonds and notes secured by first mortgages on real estate, or such stocks and bonds as shall be approved from time to time by the trust committee of the said trustee. The trustee shall have power to collect, sell, invest, reinvest, manage, and control in such manner as it shall deem best any of the property so held by it in trust: Provided,however, that during the lifetime of the grantor there shall be no sales or disposition of the stocks, bonds, and securities now delivered to the trustee, and which is the subject-matter of this trust agreement, except by and with the written consent of the grantor. (2) To collect, receive, and receipt for all income, gains, and profits from and upon the property held in trust, and after deducting all taxes, fees, expenses, and commissions paid or incurred by the trustee in the administration *Page 258 
and preservation of the trust estate, apply or pay over the said net income in the manner hereinafter provided: (a) To pay the net income from and upon the property held in trust to the grantor during his lifetime in monthly or quarterly payments, at his option. Upon the death of the grantor, the trustee shall divide the property held in trust into a sufficient number of equal shares so as to give each child then living a share, or, if any of my children shall have died leaving issue, such issue to stand in the place of the deceased parent, and my wife, if then living, to be counted as a child and have a share allotted for her benefit, as hereinafter provided. That the net income from the share allotted for the benefit of my wife shall be paid to her during her lifetime, upon her death such share to be equally distributed for the benefit of my children, the income and principal therefrom to be distributed to them as herein provided. To pay over to each child, or his or her representative, so much of the net income from his or her share as may be required for his or her support and education, the remainder of the net income received by the trustee on the share or shares of any of the children to be added to the principal of such share and invested for the benefit of same. When my youngest child surviving me at my death shall have reached the age of twenty-seven years old, then the principal constituting the share or shares of the several children held in trust shall be paid over and delivered to such child or children by the trustee, fully discharged of the trust, the child or children of any deceased child to receive the share that his or her parent would have received if then living.'
"That the value of the property held in trust under the two several trust agreements by the Wachovia Bank and Trust Company, trustee, as of the date of the hearing in this cause is approximately $945,393.55, from which the present annual income which the trustee in its discretion may allot to the defendant W. N. Reynolds II is approximately $22,000 per year, of which it is now expending for him alone approximately $10,000 to $12,000 per year; that upon the death of the defendant Annie D. Tompkins the income of the said trust estates which may be allotted to the defendant W. N. Reynolds II will be increased to the extent of the income of her shares of the trust estates, and if all of the other beneficiaries of the said trust estates should die except the defendant W. N. Reynolds II, the allowances which may be made to him will be greatly increased as provided for in the trust instruments, and the trustee would have the power to allot such income to him.
"That at his death the said Harbour H. Reynolds was survived by his widow, Annie D. Reynolds, who has since remarried and is the defendant Annie D. Tompkins; by his son Hardin W. Reynolds; by his son, the defendant W. N. Reynolds II; and by a daughter, Lucy Ruth Reynolds, who is now dead, and left no issue. The defendant Hardin W. Reynolds *Page 259 
is married and his wife is now living; there are now two children of Hardin W. Reynolds, Louise Reynolds, and Mary Rebecca Reynolds, ages six and two years, respectively, and there is possibility of further issue. There is no issue of the marriage of the plaintiff and the defendant W. N. Reynolds II. Lucy Ruth Reynolds, daughter of Harbour H. Reynolds, was born on 23 November, 1914, and would have arrived at the age of 27 years on 23 November, 1941, on which date the interests in the two trust estates will vest both in title and possession, except as to the interest of the defendant Annie D. Tompkins, which does not vest in title or possession, but which consists of the right to receive income during her life. At her death the share set aside for her becomes a part of the other interests as provided in the trust agreements.
"That the defendants W. N. Reynolds II, Annie D. Tompkins, committee for W. N. Reynolds, Louise Reynolds, Marry Rebecca Reynolds, and Annie D. Tompkins, have been duly served with summons in this cause, or have duly accepted the service of summons, and have been properly subjected to the jurisdiction of this court; that the defendant W. N. Reynolds II is duly represented in this cause both by the defendant Annie D. Tompkins, committee for W. N. Reynolds II, his domiciliary guardian, and by the defendant Harvey W. Lupton, who has been duly appointed guardian ad litem
for the said W. N. Reynolds II. The said Harvey W. Lupton has also been duly appointed guardian ad litem for the minor defendants Louise Reynolds and Mary Rebecca Reynolds, and for any other persons now unborn who may be interested in the determination of this cause. All of the defendants, including the guardian ad litem, have filed answers herein.
"The plaintiff Ruth Hatcher Reynolds has been entitled, continuously, since May, 1933, and is still entitled to support and maintenance out of the property of her husband, and particularly to proper allowances out of any amounts allotted to or for the benefit of W. N. Reynolds II, by the Wachovia Bank and Trust Company, as trustee, out of the two trust estates created by his father. The plaintiff, through her counsel, has presented argument to the effect that the trustee should be required to allot the entire share of the income to which the defendant W. N. Reynolds II might have been entitled from and after May, 1933, to him, and that she should be allowed a fair share thereof, not less than one-third of said income from and after May, 1933. This position has been disputed both by the trustee and the other defendants. The plaintiff has also contended, through her counsel, that from the date of this hearing she is entitled to have allotted to her for her support and maintenance one-third of said income. It is the desire of all of the parties, as shown by the pleadings and as argued to the court, to avoid any contest *Page 260 
upon the various contentions of the parties, and prior to the commencement of this action, and subsequent thereto, the parties have considered the execution of an agreement, subject to the approval and direction of the court, which will avoid any further litigation between the parties, which agreement is attached to the complaint, and is also attached to and made a part of this judgment. This agreement has likewise been submitted by the defendant Annie D. Tompkins, committee of W. N. Reynolds II, to the Circuit Court of Patrick County, in the State of Virginia, in a proceeding duly instituted for that purpose, the said court being the court of general jurisdiction in the State of Virginia in the county of the domicile of the defendant W. N. Reynolds II, and the said court has approved the proposed agreement and has duly authorized the defendant Annie D. Tompkins, committee of W. N. Reynolds II, to accept the service of summons in this cause and to appear herein for the purpose of procuring the approval and execution of said agreement. Therefore, the court does not pass upon the various contentions of the parties as to the legal rights of the plaintiff and the several defendants, but has considered their contentions and is of the opinion that they have been presented in good faith, and that they are sufficiently doubtful to justify the court in passing upon and approving the settlement proposed. If the plaintiff Ruth Hatcher Reynolds is correct in her contentions, and the defendant W. N. Reynolds II lives during his expectancy, the plaintiff Ruth Hatcher Reynolds would eventually receive in payments from the income of the said trust estates an amount far in excess of the value of the corpus of the trust fund proposed to be set aside for her benefit as provided in said trust agreement. The court is of the opinion that it will be advantageous to the plaintiff, to the trust estates heretofore referred to, and to the several defendants to this cause, and especially to the defendant W. N. Reynolds II and to the minor defendants, and to any persons unborn who are represented by guardian ad litem herein, that the settlement proposed should be made, and finds as a fact that the settlement proposed is fair, just, and equitable, and that the said settlement will preserve the said trust estates and is in accord with the intention of the creator thereof.
"The defendant Wachovia Bank and Trust Company, trustee, since May, 1933, and up to the hearing of this cause, has already paid the actual and necessary expenses of the plaintiff, bills have been presented by her from time to time from the persons with whom said expenses have been incurred, amounting to the total sum of $9,664.10. The court has heard and considered evidence as to the amount and nature of these expenses, and adjudges them to have been fair and reasonable. It is proposed that the payment of these expenses be now approved, and the court finds that the payment thereof was fair, just, and reasonable, and *Page 261 
for the best interest of the said trust estates and of the several defendants to this cause and the persons whom they represent. By reason of the fact that all of the matters in controversy between the plaintiff and the defendants are being settled in this proceeding, plaintiff has made no claim for any allowances in excess of amounts heretofore paid for her, except that she does claim an allowance pendente lite from the date of the commencement of this action until the date of the final approval and execution of the agreement proposed. All of the parties have proposed that said allowance should be fixed at the sum of four hundred dollars ($400.00) a month, but the plaintiff reserves the right, which the court allows her to do, to claim an amount in excess of this allowance if the settlement herein be not finally approved.
"The court has also considered allowances to counsel for the plaintiff. Evidence has been heard by the court as to the time spent and services rendered, and upon the consideration thereof finds as a fact that the sum of $3,000 is fair, just, and reasonable, this allowance to include services rendered on any appeal from this judgment. It is hereby ordered, adjudged, and decreed: (1) That all of the parties be and they are hereby authorized and directed to execute and deliver the agreement attached to the complaint, a copy of which agreement is marked `Exhibit A' and attached to this judgment and hereby made a part of this judgment and directed to be recorded upon the minutes of the court as a part thereof. (2) That upon the execution and delivery of the said agreement, the Wachovia Bank and Trust Company, trustee, is ordered and directed to set aside the securities described in Schedule A attached to said agreement and to enter upon and execute the trust provided in said agreement. (3) That the payment by the Wachovia Bank and Trust Company, trustee, prior to the hearing of this cause of the sum of $9,664.10, necessary expenses of the plaintiff Ruth Hatcher Reynolds, be and the same is hereby ratified, approved, and confirmed. (4) The Wachovia Bank and Trust Company, trustee, will pay to the plaintiff Ruth Hatcher Reynolds, as an allowance pendente lite the sum of $400.00 a month from 24 October, 1934, until the agreement hereby approved has been executed and delivered and the trust fund provided for therein has been actually set aside for the benefit of the plaintiff, as provided therein, to be paid out of the current income of the trust estates for the benefit of W. N. Reynolds II from and after the date on which said allowance begins, as provided herein.
"(5) That the Wachovia Bank and Trust Company, trustee, upon the execution and delivery of the said trust agreement and the actual setting aside of the trust fund provided for therein shall pay to the plaintiff's counsel the sum of $3,000 out of either the corpus or the income, in the discretion of the trustee, of either or both of the said *Page 262 
trust estates established by Harbour H. Reynolds for the benefit of W. N. Reynolds II and of which he is the first beneficiary. (6) The costs of this action shall be paid by the Wachovia Bank and Trust Company, trustee, from the same source as the allowance provided for in paragraph 5 of the judgment. (7) This cause is retained for further orders. This 18 January, 1935, J. Will Pless, Jr., Judge presiding."
Exhibit A is as follows: "North Carolina — Forsyth County. This agreement, made this ________ day of ______________, 193_, by and between Ruth Hatcher Reynolds, party of the first part, and W. N. Reynolds II, by ____________________, guardian ad litem of W. N. Reynolds II, and Annie D. Tompkins, committee of W. N. Reynolds II, and Wachovia Bank and Trust Company, trustee under two certain trust agreements, dated 5 August, 1922, executed by Harbour H. Reynolds and Wachovia Bank and Trust Company, Hardin W. Reynolds, Louise Reynolds, and Mary Rebecca Reynolds, by ________________, their guardian ad litem, and __________________, guardian ad litem for any persons unborn interested in said trusts, Witnesseth: That whereas, on the ________ day of ___________________, 1934, a judgment of the Superior Court of Forsyth County, North Carolina, was entered in a certain civil action entitled `Ruth Hatcher Reynolds v. W. N.Reynolds II et al.,' which said judgment is recorded in Book No. ____________ of the minute docket of said court, on page ________, directing the execution of this agreement: Now, therefore, in consideration of the mutual covenants and conditions herein contained and in obedience to said judgment, it is hereby agreed: (1) That the Wachovia Bank and Trust Company shall set aside out of the funds held in trust by it for the benefit of W. N. Reynolds II under either one or both of the two certain trust agreements, dated 5 August, 1922, executed by Harbour H. Reynolds and Wachovia Bank and Trust Company, securities as shown on the paper marked Schedule A hereto attached and hereby made a part of this agreement, to be held by it upon the following trusts: (a) To keep the principal of the said funds invested in high-grade securities, including bonds of the United States or any state or political subdivision thereof, or bonds and notes secured by first mortgages on real estate, or such stocks and bonds as shall be approved from time to time by the trust committee of the said trustee. The trustee shall have power to collect, sell, invest, reinvest, manage, and control in such manner as it shall deem best any of the properties so held by it in trust. (b) To collect, receive, and receipt for all income, gains, and profits from and upon the property held in trust, and after deducting all taxes, fees, expenses, and commissions paid or incurred by the trustee in the administration and preservation of the trust estate, apply or pay over the said trust funds in the manner hereinafter provided: (1) To pay to Ruth Hatcher Reynolds from the date of the execution of this agreement until *Page 263 
23 November, 1941, if she shall live so long, the sum of $250 per month, whether the net income from said trust funds shall be sufficient for that amount or not, and from and after 23 November, 1941, to pay the entire net income from and upon the property held in trust under this agreement to Ruth Hatcher Reynolds in equal monthly or quarterly installments, as she shall elect, during her lifetime. In the event that any emergency shall arise which in the sole opinion of the trustee shall require the payment of any sum in excess of the annual income to or for the benefit of the said Ruth Hatcher Reynolds, the trustee shall have the power prior to 23 November, 1941, to use any surplus or accumulated income in said trust for her benefit, as in its judgment shall be necessary. In the event of such an emergency after 23 November, 1941, the trustee may use any part of the surplus or accumulated income or principal of said trust fund. If the said W. N. Reynolds II shall die prior to 23 November, 1941, at the death of Ruth Hatcher Reynolds to pay the entire trust fund to the Wachovia Bank and Trust Company, to be held, managed, and distributed by it in accordance with that agreement between Harbour H. Reynolds and Wachovia Bank and Trust Company, under date of 5 August, 1922, relating to his share in the estate of Walter R. Reynolds from which this trust has been created. If the said W. N. Reynolds II shall die after 23 November, 1941, at the death of Ruth Hatcher Reynolds to manage, control, and distribute said funds in such manner as she shall, by her last will and testament, executed in accordance with the laws of the State of North Carolina, appoint, and in default of such appointment, to such persons as shall be her next of kin under the laws of North Carolina. If, by reason of the death of all of the children of Harbour H. Reynolds and of all the issues of the children of Harbour H. Reynolds prior to 23 November, 1941, the trusts created by the two trust agreements between Harbour H. Reynolds and Wachovia Bank and Trust Company, trustee, under date of 5 August, 1922, shall terminate, the trust hereby created shall likewise terminate and the Wachovia Bank and Trust Company, trustee, shall pay over and deliver said trust funds to such persons as may then be entitled thereto: Provided, however, that if, upon the termination of said trusts prior to 23 November, 1941, any person who is a party to the action approving this contract, or any other person bound by the decree in said action, shall be entitled to receive property of said trust estates equal to, or in excess of, the property herein set aside for the benefit of Ruth Hatcher Reynolds, then this trust shall not terminate, and the property herein set aside shall be deducted from that to which such person or persons shall be entitled, in proportion to their respective interests. (2) As compensation for its services, the trustee shall retain annually 2 1/2 per cent of the gross income of each year. (3) Ruth *Page 264 
Hatcher Reynolds does hereby release W. N. Reynolds II from any claim that she may now or at any time hereafter have for support and maintenance, and she does hereby further release the said Wachovia Bank and Trust Company, trustee, and the beneficiaries under the two trusts created by Harbour H. Reynolds, under date of 5 August, 1922, from any claim that she may have against them, or any of them, for the payment of any sum to which she may be entitled, or which she may claim as the wife of W. N. Reynolds II, this agreement to take effect upon the execution and delivery of this instrument and the delivery of the securities herein described to the Wachovia Bank and Trust Company, as trustee hereunder, and to continue so long as this agreement shall remain in full force and effect. In witness whereof the parties hereto have set their hands and seals, all as of the day and year first above written.
AnnualShares Gross Income
712 R. J. Reynolds Tobacco Common `B' ............. $2,136.00 $3,000 PV City of Winston-Salem 5s, due 4/1/52 ....... 150.00 4,000 PV State of N.C. 4s, due 4/1/68 ............... 160.00 7,000 PV State of N.C. 5s, due 7/1/61 ............... 350.00 4,050 PV U.S. Treasury 3s, due 6/15/48-46 ........... 121.50 5,650 PV U.S. Treasury 3 1/4s, due 4/15/46-44 ....... 183.62 -------- Annual gross income ................................... $3,101.12"
The defendants excepted and assigned error to the signing of the judgment and appealed to the Supreme Court.
The record discloses a distressing situation. The plaintiff was married to defendant W. N. Reynolds II on 8 August, 1932, and they lived together as husband and wife until the latter part of May, 1933. In May, 1933, the mind of W. N. Reynolds II became so affected that his wife, the plaintiff, was compelled by reason of his mental condition to live separate and apart from him. It was necessary to place him in an institution for treatment, as he had dementia praecox, and it is impossible for his condition to improve — it is incurable. In Virginia, his domicile, the court in that state adjudicated him insane. The plaintiff is penniless unless this Court makes an allowance out of *Page 265 
the property of her husband. The defendant Wachovia Bank and Trust Company, trustee, under two trust agreements, has a corpus of approximately $945,393.55 from which the trustee has a present annual income with which in its discretion it may allot to W. N. Reynolds II approximately $22,000 per year, and now spending for him some $10,000 to $12,000 a year. All parties necessary to the determination of the controversy have been properly subjected to the jurisdiction of this Court.
The questions presented: First: Has the wife of an insane beneficiary of trust agreement the right to support and maintenance from the income of the trust, when such income substantially exceeds the needs of the beneficiary, and the propriety of the expenditures made by the trustee for such purposes? This question must be answered in the affirmative.
Second: Confirmation of proposed agreement with the plaintiff providing permanently for her support and maintenance. Under the facts and circumstances of this case, the agreement must be confirmed.
Speaking as to the first question presented, In re Latham, 39 N.C. 231, it has been held that the wife and infant children, if he has any, of a lunatic and the lunatic are entitled to have a sufficient fund of the lunatic's property for maintenance set aside, before the Court makes an order for the payment of debts. It is held in McLean v. Breece,113 N.C. 390, that the Court would not order payment of a lunatic's debts if it would deprive him or his family of maintenance. It is also held that allowances may be made for the support of the lunatic or his wife, upon the principle that the lunatic husband owed the legal duty of supporting and maintaining his wife. Brooks v. Brooks, 25 N.C. 389; In re Hybart,119 N.C. 359; see C. S., 1665 and 1667; 59 A.L.R., pp. 653-4.
It was said in Read v. Turner, 200 N.C. 773 (778): "Where, however, adequate provision has been made for the support and maintenance of a lunatic and the dependent members of his family, out of his estate in the hands of his guardian, and there remains any part of said estate which is available for the payment of his creditors, such part of said estate should be disbursed by the guardian, under an order or judgment of the Superior Court, pro rata, among the creditors, where there are no priorities by virtue of liens or mortgages." Anderson v. Anderson, 183 N.C. 139 (144);Holton v. Holton, 186 N.C. 355.
It is well settled that a husband is bound to support his wife. In the present case the income from the husband's estate is ample to support himself and his wife. The fact that the husband is a lunatic does not prevent this Court of its general equity jurisdiction, when the facts are fully found as in this case, from granting the relief prayed for by plaintiff and rendering the judgment set forth in the record. *Page 266 
Speaking as to the second question presented: We think, under the facts and circumstances of this case and the inherent equitable jurisdiction of the Superior Court, that the proposed agreement with the plaintiff, providing permanently for her support and maintenance, was properly approved.
It appears from the record in this case that there has been an elaborate judicial investigation of the facts upon which the judgment in this case is based, and all the facts set forth. In the judgment is the following: "Therefore, the court does not pass upon the various contentions of the parties as to the legal rights of the plaintiff and the several defendants, but has considered their contentions, and is of the opinion that they have been presented in good faith, and that they are sufficiently doubtful to justify the court in passing upon and approving the settlement proposed. If the plaintiff Ruth Hatcher Reynolds is correct in her contentions, and the defendant W. N. Reynolds II lives during his expectancy, the plaintiff Ruth Hatcher Reynolds would eventually receive in payments from the income of the said trust estates an amount far in excess of the value of the corpus
of the trust fund proposed to be set aside for her benefit, as provided in said trust agreement. The court is of the opinion that it will be advantageous to the plaintiff, to the trust estates heretofore referred to, and to the several defendants to this cause, and especially to the defendant W. N. Reynolds II and to the minor defendants, and to any persons unborn who are represented by guardian ad litem herein, that the settlement proposed should be made, and finds as a fact that the settlement proposed is fair, just, and equitable, and that the said settlement will preserve the said trust estates, and is in accord with the intention of the creator thereof." Bank v. Alexander, 188 N.C. 667; Spencer v. McCleneghan,202 N.C. 662.
In the Spencer case, supra, at p. 671, speaking to the subject, is the following: "The policy of the law is to encourage settlement of family disputes, like the present, so as to promote peace, good will, and harmony among those connected by consanguinity or affinity. Equity favors amicable adjustments. In the present action the contract that was made was a compromise over the provisions of the will, based on the present deflation in prices and an adjustment of other differences. The court below found the facts at length with care, and rendered judgment that it was to the best interest of all that `the terms and provisions of said contract . . . be accepted, ratified, and approved, and carried into effect.' It was further found as a fact `that the parties to this proceeding are all properly before the court.'"
For the reasons given, the judgment of the court below is
Affirmed. *Page 267