## HOLLENBECK v. HOLLENBECK.

Circuit Court, Dade County.
March 31, 1948.

Thomas C. Mayes of Morrow, Mayes & Sutton, Miami, for plaintiff.

Robert M. Thomson, Miami, for defendant.

STANLEY MILLEDGE, Circuit Judge.

Our Supreme Court has never passed on the question whether a wife is entitled to an accounting from her husband of the income from property held as an estate by the entireties. There are adjudications on this question by courts of other states but these cases are without value unless one examines something of the history of the estate in those jurisdictions. Neither can one assume that the estate as it was known to the common law is what is in force in Florida, as we cannot look with assurance to the common law incidents of this estate to provide the answer. Failure to examine the subject thoroughly leads to criticism which only adds to the confusion. The article in 28 Cornell Law Review 117, is an example. The writer fails to understand that the conflict between the courts of Pennsylvania on the one hand and those of New York and New Jersey on the other are no mere differences between the wife's right to an accounting before and after the divorce —they reflect different basic concepts as to what an estate by the entireties is as a result of the married women's acts.

At common law the estate by the entireties with its quality of survivorship was the result of the incapacity of a married woman to take a moiety with her husband. The concept that a married woman was not a legal person naturally resulted in the notion that when lands were granted or devised to husband and wife they together constituted but one person. 2 Coke on Littleton 187 (a), 2 Blackstone's Comm. 182, 2 Kent. 132, Bredon's Case, 1 Coke R. 193.

Although the authority cited in English v. English (Fla.), 63 So. 822, suggests otherwise, it is clear that the estate results from nothing except the incapacity of the married woman. No rule of construction is involved to ascertain the supposed intention of the grantor. This is demonstrated by the impossibility of creating the estate unless the grantees are husband and wife by any set of words, and by the fact that a grant which would create the estate if the grantees were intermarried does not do so if they are not, nor does their subsequent marriage accomplish any change in the character of the estate. See Walthall v. Goree, 36 Ala. 728. The concept which produced the estate by the entirety had other similar results. The husband, by marriage, acquired all of the title to his wife's personal property and choses in action, the right to hold and enjoy the rents and profits of her real estate, and to all the personal property she might acquire during coverture and to all of her earnings, 2 Coke's Littleton 187 (b), 4 Kent 363. The estate was wholly the creation of common law judges whose names are unknown to us.

Jure uxoris, the husband had the control and usufruct of the estate. While the estate could not be conveyed without the consent of the wife, the estate meant little to her (as a matter of law) except the right of survivorship. Subject to this, the husband's creditors could reach the estate. Hall v. Stephens, 65 Mo. 670, 2 Pollock and Maitland, History of English Law. The common law judges neither attempted nor achieved a device for putting land beyond the reach of creditors. A fortiori, the wife could no more have an accounting of the income from the estate by the entireties than she could of the income from her separate estate.

One would imagine that the supposed virtue of the common law to change with changing conditions would do away with an estate that rested on the ancient concept of the legal status of a married woman as soon as all the English speaking world, except the judges, came to regard a married woman as a person. At least one might be justified in supposing that, when legislature after legislature enacted laws recognizing the married woman as a legal person, with capacity to take and manage her own property, make contracts and incur liabilities, all courts would concede, without hesitation, that an estate owing its existence solely to the legal fiction that husband and wife are one person could no longer exist when they were recognized by statute to be two persons.

The courts of some ten or more states did reach this conclusion. The reason on which the rule of common law was founded ceased to exist so the rule also ceased to exist. See particularly Gill v. McKinney (Tenn.), 205 S. W. 416; Walthall v. Goree, 36 Ala. 728; Cooper v. Cooper, 37 Ill. 56; Swan v. Walden (Cal.), 103 P. 931; Whyman v. Johnston (Colo.), 163 P. 76; Wilson v. Wilson (Minn.), 45 N. W. 710; Hoffman v. Stiggers, 28 Iowa 302; Clark v. Clark, 56 N.H. 105; Appeal of Robinson (Maine), 33 Atl. 652. A quotation from the last cited case is typical of the rest:

It is manifest that these statutes have wrought great modifications and radical changes in the relative property rights of husband and wife. In contemplation of law, they are no longer one person, and their interests in property are no longer identical, but separate and independent. Under these statutes the wife is invested with greater privileges, and weighted with greater responsibilities and liabilities, than before. The rule of the common law creating estates by entirety is irreconcilable with both the letter and the spirit of these statutes. It never rested upon a rational or substantial groundwork. It had its origin in feudal institutions and social conditions which were superseded centuries ago by the more enlightened principles of a progressive civilization. It is now repugnant to the American idea of the enjoyment and devolution of property, and to the true theory of the marriage relation. "The reason of the law," says Lord Coke, "is the life of the law, and *cessante ratione lex ipsa cessat.*" The fictitious basis of this rule having been removed, the rule itself must fail. To declare that there is no authority in the court to effectuate a clearly-expressed and unmistakable intention of a grantor or testator, against such an antiquated and exploded dogma, would be a poor tribute to the creative power of the law, and the original conceptions of justice in modern courts. The common law would ill deserve its familiar panegyric as the "perfection of human reason," if it did not expand with the progress of society, and develop with new ideas of right and justice.

In one state, Massachusetts, the conclusion was reached that the married women's acts had no effect whatever on the estate, Pray v. Stebbins, 4 N. E. 824. That court has at least been consistent; for it left unmodified the common law incidents of the estate. The creditor could reach the property; the wife could have no accounting. Licker v. Gluskin, 164 N. E. 613.

In some states the courts were unable to let an obsolete fiction die a decent, if senile, death, nor could they completely ignore the effect of the married women's acts upon the fiction. They achieved a compromise by declaring that an estate by the entireties now amounts to a tenancy in common with right of survivorship. As illustrations see Zuber v. Porter, 98 N. J. L. 444; Shulz v. Ziegler, 80 N. J. Eq. 199, 83 Atl. 968; Hiles v.

Fisher (N. Y.), 39 N. E. 337; Rezabek v. Rezabek (Mo. App.), 192 S. W. 107. They concluded that since the husband was deprived of control over his wife's lands he was equally deprived of exclusive control over the estate by the entireties. From this they logically concluded that a creditor could reach the debtor's share and either spouse could have accounting. The following quotation from Hiles v. Fisher (N. Y.) states this point of view:

> In considering what effect, if any, the legislation in this state has had upon the right of the husband to the rents, profits, and control of lands held by him and his wife in entirety during their joint lives, it is important to regard, not only the language, but the spirit, of the new enactments . . . . . If it is still held, notwithstanding this legislation, that the husband takes the whole rents and profits, during coverture, in lands held in entirety, and may exclude the wife from any participation therein, an exception is allowed, standing upon no principle, and it deprives the wife, although she has an undoubted interest and estate in the land, from any benefit thereof during the lives of both. There are, as we can perceive, but two other alternatives—either the rents and profits follow the nature of the estate, and can neither be disposed of nor charged without the joint act of both husband and wife, which seems to be the view taken in McCurdy v. Canning, 64 Pa. St. 39; or the parties become tenants in common or joint tenants of the use, each being entitled to one-half of the rents and profits during the joint lives, with power to each to dispose of or to charge his or her moiety during the same period, which seems to be the view taken in Buttlar v. Rosenblath, 42 N. J. Eq. 651, 9 Atl. 695. We think the rule adopted in New Jersey best reconciles the difficulties surrounding the subject. The estate granted is not thereby changed. It leaves it untouched, with all its common-law incidents. It deals with the rents and profits and the use and control of the estate during coverture only, and gives to each party equal rights so long as the question of survivorship is in abeyance, thereby conforming to the intention of the new legislation to take away the husband's right, jure uxoris, in his wife's property, and to enable the wife to have and enjoy "whatever estate she gets by any conveyance made to her, or to her and others jointly, and does not enlarge or diminish that estate."

One group of states reached an even stranger conclusion. They said the married women's acts did not abolish estates by entireties. To them the common law concept of the married woman still lived on. Not only that, they expanded the "two persons are one person" idea and applied it to the control and the disposition of the income as well as to ownership. By expanding a common law fiction they achieved a result far stranger than that achieved in the fifteenth century for now the courts had created an estate beyond the reach of creditors. This was a result sanctioned neither by the common law nor by modern statutes.

Clark, C. J., dissenting in Holton v. Holton (N.C.), 119 S.E. 751, (North Carolina belongs to the same school of thought about estates by the entireties as does Florida) said of the estate: "The sole effect of this retention, besides the denial of the interest of the wife in the property, is to afford opportunity to parties who may wish to exempt their property from liability for the debts of either husband or wife."

Florida belongs in the latter group. English v. English (Fla.), 63 So. 822, decided that the married women's acts did not affect estates by the entireties—virtually without any consideration of the authorities, and without the application of independent thought. Nothing was there involved except the right of survivorship. In 1920 the court decided that a creditor could not reach the husband's share of the income because he had no share. The income was indivisible. Ohio Butterine v. Hargrave (Fla.), 84 So. 376.

The court adopted the conclusion reached in Chandler v. Cheney, 37 Ind. 39 (1871), and accepted the reasons given by the court for denying the husband's creditor relief against the estate. The Indiana court proceeded to create an estate immune from creditors. The social good of protecting the home was the sole criterion. Whatever sense, if any, this made in Indiana it made none in Florida. So far as the protection of the home was concerned the constitutional provisions regarding the homestead accomplished that. No effort was made to justify an exemption from creditors as to *all* a man's property. The Florida married women's acts in 1920, unlike those in Indiana in 1871, contained no express preservation of estates by the entireties. It is true that in the Hargrave case the court mentions the effect of the married women's acts but this was not reasoned out nor really discussed. There can be no doubt about what an estate by the entireties in Florida is today. It is a device by which property may be put beyond the reach of all future creditors.

To accomplish this, the unity of "control" has been added to the common law unities of time, title and possession. To the common law incapacity of the married woman to take a moiety of an estate is added her incapacity to take a moiety of the income. She is declared to be incapable of enjoying her indivisible right to the income if her husband's creditors can reach any part of it. The notion behind this is that since husband and wife are one person the income as well as the fee is indivisible. It must inevitably follow, then, that a wife can

have no accounting against her husband for the income, for how can a part of a person have an accounting from the other part? Of course, this sounds absurd but it is no more absurd than denying a creditor for the same reason.

So far as I have been able to ascertain, these courts which have added the unity of control have, with the exception of Maryland,[1] been consistent in this—since they deny relief to the husband's creditors because her interest in the income as well as the ownership is indivisible then for the same reason neither spouse can have accounting against the other. These cases are illustrated by the following: Bruce v. Sugg (N.C.), 13 S.E. 790; Otto F. Stiffel's Union Brewing Co. v. Saxy (Mo.), 201 S. W. 67; Hurd v. Hughes (Del.), 109 Atl. 418; Hoffmann v. Newell (Ky.), 60 S. W. 2d 607; Wakefield v. Wakefield (Penn.), 25 Atl. 2d 841; Morrill v. Morrill (Mich.), 101 N.W. 209. In the latter case the court said: "Dickey v. Converse [(Mich.), 76 N. W. 80] is, in my opinion, an authority against, rather than in support of, the proposition under consideration. It was there decided that the husband has not—and this certainly means the wife has not—such interest in the crops that might be taken on execution. If the wife's interest in such crops cannot be taken on execution, I do not think that it can be separated or set out to her on an accounting."

So far as this particular case is concerned, to deny the wife a right to an accounting does not produce a shocking result, nor is it apt to wherever a man puts all or a substantial part of his business property in an estate by the entireties as a protection against creditors. It would produce injustice under other circumstances as where the wife has furnished a substantial part of the purchase price. At all events the notion of an indivisible income, besides its foundation on an outworn fiction, affords no practical basis for working out solutions of problems concerning management, control, the right to income and the rights of creditors. With the common law fiction of husband and wife being one person went the common law concept that for all practical purposes the "one person" was the husband. At least this made solutions possible. An impossible situation is created by vesting control equally in two persons, neither responsible to the other or to their individual creditors.

---

[1] McCubbin v. Stanford (Md.), 37 Atl. 214; Whitelock v. Whitelock (Md.), 143 Atl. 712; Masterman v. Masterman (Md.), 98 Atl. 537. No effort is made to rationalize the divergent results nor does the court appear to recognize its inconsistency.

Perhaps it is possible to hope that the Supreme Court may still overrule the Hargrave and similar cases. The most recent of the married women's acts provides that it shall not be construed to abolish estates by the entireties or any of its incidents, sec. 708.10, F. S. A.—so the English cases could not be overruled. The statute does not, however, define either the estate or its incidents. The incident of exemption from debt judicially created in the Hargrave case is no inherent part of the estate. What the courts are able to create they should be able to abolish. It is too late (except for the legislature) to abolish the estate; it is not too late to adopt the New York and New Jersey view that the estate, as modified by married women's statutes, is in reality a tenancy in common with right of survivorship.