ANN E. GEORGE v. D. P. HIGH, Adm'r.

*Husband and Wife—Contracts.*

1. In a suit brought by a wife against the administrator of her deceased husband for money " advanced and lent" to him during the coverture, where the marriage took place since the adoption of the constitution of 1868 ; *Held,* that the contract between them was not inconsistent with public policy, and therefore valid, the making thereof not being prohibited by the act of 1871–72, ch. 193, and that the action could be maintained.

2. The policy of the courts in respect to the enforcement of contracts of a husband with his wife, based upon valuable consideration, discussed by RUFFIN, J.

*(Love* v. *Com'rs,* 64 N. C., 706 ; *Kirkman* v. *Bank,* 77 N. C., 394 ; *Dula* v. *Young,* 70 N. C., 450 ; *Kee* v. *Vasser,* 2 Ired. Eq., 553 ; *McKinnon* v. *McDonald,* 4 Jones Eq., 1 ; *Smith* v. *Smith,* Winst. Eq., 30, cited, commented on and approved.)

CIVIL ACTION, heard on complaint and demurrer at Fall Term, 1880, of COLUMBUS Superior Court, before *Avery, J.*

The demurrer was sustained and the plaintiff appealed.

*Mr. D. J. Devane,* for plaintiff.

*Messrs. W. H. Pace* and *J. W. Ellis,* for defendant.

RUFFIN, J. The issue in this case is altogether one of law growing out of the demurrer of the defendant to the complaint.

The complaint alleges that the plaintiff being the wife of the defendant's intestate, at several times *advanced* and *lent* to her husband divers sums of money, amounting in the aggregate to some $2,700, no part of which has been paid.

The defendant assigns as grounds for his demurrer :

1. That as it appears on the face of the complaint, the plaintiff was the wife of the defendant's intestate, at the time the alleged advancements were made, and it does not

appear that the amounts advanced were to be repaid, or that said intestate accepted the same as a loan and agreed to repay them, or that they were advanced for his benefit, and not the mutual benefit of both husband and wife, and for the support of their family, the action cannot be maintained.

2. That the plaintiff has not the legal capacity to sue the administrator of her intestate husband for money, or on account of business transactions between them during coverture.

3. That the complaint does not state facts sufficient to constitute a cause of action.

Upon the authority of the case of *Love* v. *The Commissioners of Chatham*, 64 N. C., 706, we shall have to disregard the defendant's last ground of demurrer, since it fails to specify any particular objection to the complaint.

As to his first ground of objection, it does not seem to us to be true in point of fact. The language of the complaint is that the plaintiff *advanced* and *lent* to the defendant's intestate a sum of money, &c., and this in common acceptation is equivalent to saying that he accepted it as a loan under an agreement to repay. Webster defines the verb *lend* to mean, " to grant a thing to be held on the condition that its equivalent in kind will be returned—*as to lend money.*" It must be observed, too, that the demurrer admits the truth of her allegation that she did so advance and lend him the money.

As expressed, we suspect, the second specification goes beyond the real meaning of the draughtsman, as it will hardly be contended, we suppose, that a widow is without all legal capacity to sue the administrator of her deceased husband, on account of any transaction that may occur between them during her coverture. It must therefore have been intended to raise the question as to the plaintiff's capacity, not to sue her husband's administrator, but to make

the contract alleged with her husband while living, and which it is the object of her action now to enforce. It was so treated by *Mr. Pace* in his well considered argument for the defendant, and we will consider it in the same light.

As the effect of the plaintiff's contract with her husband is not to charge, or pervert any part of her real or personal estate, her case does not fall within the act of 1871–2 (Bat. Rev., ch. 69, § 17,) which forbids her entering into any such contract without the written assent of her husband, for as said in *Kirkman* v. *Bank of Greensboro*, 77 N. C., 394, that statute, like the constitution, was intended merely to restrict a wife's power to *convey* or *charge* her estate, and in no wise to deprive her of the power to receive or acquire property independently of her husband's consent. Her capacity to make such a contract as the one sued on with her husband, depends therefore upon the law as it stood originally or as modified by some statutory provision other than the one just referred to.

At the common law the husband and wife were regarded as so entirely one as to be incapable of either contracting with, or suing one another, but in equity, it was always otherwise, and there, many of their contracts with each other were recognized and enforced. In the case of *Dula* v. *Young*, 70 N. C., 450, a contract between husband and wife made in 1842, under which he sold her land and put the proceeds in another tract, promising to take the title to his wife, but instead thereof taking it to himself, was given force and effect after his death, and his administrator was not permitted to sell the same, though urged to do so by creditors. And so in the case of *Kee* v. *Vasser*, 2 Ired. Eq., 553, it was held where a husband had given to his wife what money she could make by her own industry and the sale of the products of their own dairy and garden, and she had invested the same in the purchase of a tract of land, that the same could not be sold at the suit of the husband's executor, for

say the court, it is the doctrine laid down by courts of equity in modern times that a wife can acquire separate property from her husband, when the gift is made clear by some irrevocable and distinct act of his, and the fact that the husband had himself, at times, borrowed the money of his wife, though without giving any bond or written acknowledgment therefor, was taken, with other acts and declarations of his to be of sufficient significance to confirm her title to the land.

It is true that in the later case of *McKinnon* v. *McDonald*, 4 Jones Eq., 1, it was said that such a gift from husband to wife would not be good against the *creditors* of the former. But that was upon a distinct ground altogether, and because as to them it was fraudulent, being voluntary, and the case of *Kee* v. *Vasser* is expressly referred to, and distinguished from the one then under consideration. And in the case of *Smith* v. *Smith*, Winst. Eq., 30, where under an agreement with her husband, similar to that made in the case of *Dula* v. *Young*, the plaintiff had joined in a sale of her land, and permitted her husband to receive the purchase money, he subsequently purchased another tract intending to have the same conveyed to his wife, but died before doing so, it was held that the wife, though she could not have her parol contract with her husband in regard to the land specifically enforced, was still entitled to recover from his administrator the proceeds of her land. And the decision goes upon the express ground that courts of equity will enforce contracts of a husband with his wife based upon valuable consideration.

These cases have not been referred to because they have any direct bearing upon the plaintiff's case, for being a plain action of assumpsit, hers must depend upon the law as distinguished from equity, but they have been cited because they serve to show the *policy* of the courts of modern times in regard to this fiction as to the unity of person and their readiness to dispense with it on account of its tendency

oftentimes to defeat real justice and disappoint the most generous intentions of husbands.

By reference to the original act of 1871-'2, it will be seen that the contracts which a married woman may make are classified under two heads. ( 1 ) Those which she may make with strangers, and which are required to be with the written consent of her husband in case they affect her real or personal estate, and ( 2 ) those which she may make with her husband. Under the latter it is provided that no contract between husband and wife made during coverture shall be valid to effect her real estate for a longer time than three years, or to impair the capital of her personal estate for more than three years, unless the same shall be in writing, and proved as required of conveyances of her land, but that all other contracts between them *not inconsistent with public policy* shall be valid. Act 1871-'2, ch. 193, sec. 17, 27, 28. As it cannot be pretended that the contract of the present plaintiff with her husband can affect, either her real or personal estate in the sense of the statute, and as it is consistent with what we have just seen to be the long established policy of the law, it would seem to follow *necessarily* that it must be valid.

By a further provision of the same statute ( § 29 ) the savings of the wife's separate property are secured to her, so that if the husband receive and use the same without objection on her part, the law will imply a promise to repay, and hold him to account therefor, provided the action be begun within a prescribed time. If so, then how can it be doubted that an express promise to pay on his part will be valid ?

Whether he could be held to account in case his receipt and use of her income were done with her *knowledge* and *express assent* we do not decide, but are inclined to the opinion that the law in that case would imply no assumpsit and that nothing short of a positive agreement on his part to repay would suffice to charge him or his estate, especially if used

for their mutual comfort, or the maintenance of their children. Of course it will be understood that we have been speaking with reference to marriages contracted since the adoption of the constitution of 1868. In the case of the plaintiff here the marriage occurred in 1875, as admitted by the demurrer.

We think therefore that His Honor in the court below erred in sustaining the demurrer and that the same must be overruled. Let this be certified and the cause remanded to the end the defendant may answer if so advised.

Error.                                            Reversed.