PAULINE H. GARLOCK, Respondent, *v.* OLIN J. GARLOCK, Appellant.

Argued December 2, 1938; decided January 3, 1939.

The following question was certified:

" Upon the record in this case was the defendant entitled to a dismissal of the complaint as matter of law?"

*Paul Folger* and *Keith D. Poland* for appellant. The agreement is contrary to public policy and void. (*Mirizio* v. *Mirizio*, 242 N. Y. 74; *Kershner* v. *Kershner*, 244 App. Div. 34; 269 N. Y. 655; *Gregg* v. *Gregg*, 133 Misc. Rep. 109; *Miller* v. *Miller*, 132 Misc. Rep. 121; *Aufiero* v. *Aufiero*, 222 App. Div. 479; *Winter* v. *Winter*, 191 N. Y. 464; *Clark* v. *Fosdick*, 118 N. Y. 7; *Tirrell* v. *Tirrell*, 232 N. Y. 224; *Gray* v. *Butler*, 116 App. Div.

816; *Matter of Hughes,* 225 App. Div. 29; 251 N. Y. 529; *Whedon* v. *Whedon,* 247 App. Div. 463; *Dowie* v. *DeWinter,* 203 App. Div. 302; *Kaufman* v. *Kaufman,* 158 App. Div. 892; *Galusha* v. *Galusha,* 116 N. Y. 635.)

*Robert T. Dwyer* and *David H. Shearer* for respondent. The agreement is not prohibited by section 51 of the Domestic Relations Law (Cons. Laws, ch. 14) and is not against public policy. (*Winter* v. *Winter,* 191 N. Y. 464; *Pettit* v. *Pettit,* 107 N. Y. 677; *Matter of Burridge,* 261 N. Y. 225; *Rodgers* v. *Rodgers,* 229 N. Y. 255; *Brooklyn Trust Co.* v. *Lester,* 239 App. Div. 422; *Werner* v. *Werner,* 169 App. Div. 9; *Holihan* v. *Holihan,* 79 App. Div. 475; *Chamberlain* v. *Cuming,* 99 App. Div. 561; 184 N. Y. 526; *Lehmann* v. *Lehmann,* 137 Misc. Rep. 9; *Vallee* v. *Vallee,* 154 Misc. Rep. 620.)

CRANE, Ch. J. The parties to this action are husband and wife, living in Palmyra, New York. Without any thought or idea of separation they entered into the following agreement:

" THIS AGREEMENT made and entered into this 2nd day of April, 1935, by and between Olin J. Garlock, of Palmyra, New York, party of the first part, and Pauline Harvey Garlock, of Palmyra, New York, party of the second part,

" WHEREAS, party of the first part and party of the second part are husband and wife, and reside together as such in the village of Palmyra, New York,

" WITNESSETH:

" That for and in consideration of the premises and of the mutual covenants hereinafter contained, and of the obligations of the party of the first part to support and maintain party of the second part as his lawful wife,

" *Now, therefore,* the parties do agree as follows:

" That party of the first part hereby covenants and agrees that he will pay over to party of the second part the sum of Fifteen Thousand Dollars ($15,000.00) per

annum for and during the term of the natural life of party of the second part, the said sum to be paid over by him in equal monthly installments of Twelve Hundred and Fifty Dollars ($1250.00) each in advance on the first day of each and every month for and during said term.

" It is expressly covenanted and agreed by party of the second part that the sum and/or sums paid to her as aforesaid by party of the first part shall be used by her for her support and maintenance, and that the same sum and/or sums received by her under this agreement shall be in lieu of and in release of any and all obligations which the party of the first part otherwise has or shall have to support and maintain party of the second part.

" It is expressly covenanted by the parties that any and all expenses necessarily incurred by party of the second part because of sickness or accident to her person, shall not be included in the sum and/or sums to be paid to her by party of the first part and that the same shall remain the obligation of the party of the first part.

" It is expressly covenanted and agreed by the party of the first part that this agreement and all the obligations and conditions hereof shall be binding upon his heirs, executors, administrators and assigns.

" In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

" (Signed) OLIN J. GARLOCK                [L. S.]

" (Signed) PAULINE HARVEY GARLOCK [L. S.] "

The husband, having failed to meet the monthly install-ment of $1,250 due the 1st day of March, 1938, the wife has brought this action to recover the sum. The answer sets up many defenses, including the plea of undue influence, duress and mistake. On motion for summary judgment the reply affidavit of the wife's attorney states that the agreement was drawn after a conversation with the husband, who stated that, while the parties were most happily married, they desired to reduce to a stated sum " the amount which Mr. Garlock should provide

her yearly for her support and maintenance." The Special Term dismissed the complaint on the ground that the contract was void under section 51 of the Domestic Relations Law (Cons. Laws, ch. 14), but the Appellate Division reinstated it, by a divided court, two of the justices dissenting.

By reason of the marriage relation there is imposed cn the husband the duty to support and maintain his wife in conformity with his condition and station in life. (*Keller* v. *Phillips*, 39 N. Y. 351, 354; *De Brauwere* v. *De Brauwere*, 203 N. Y. 460; *Rodgers* v. *Rodgers*, 229 N. Y. 255.) Marriage is frequently referred to as a contract entered into by the parties, but it is more than a contract; it is a relationship established according to law, with certain duties and responsibilities arising out of it which the law itself imposes. The marriage establishes a status which it is the policy of the State to maintain. Out of this relationship, and not by reason of any terms of the marriage contract, the duty rests upon the husband to support his wife and his family, not merely to keep them from the poorhouse, but to support them in accordance with his station and position in life. This works both ways. When he is prosperous, they prosper; when financial misfortune befalls him, the wife and family are also obliged to receive less. The duty of the husband, however, as matter of policy and as an obligation imposed by law, cannot be contracted away. This court, in *Tirrell* v. *Tirrell* (232 N. Y. 224, 229), said: " In the public interest the State has ever deemed it essential that certain obligations should attach to a marriage contract, amongst which is the duty of a husband to support his wife. Defendant was, therefore, shorn of power to enter into any arrangement or contract which would relieve him cf such obligation." Section 51 of the Domestic Relations Law enacts that a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife.

This contract is void for the reason that it violates this provision which continues what has always been the policy of the law regarding marriage and its incidents. If this be a valid contract it must work both ways; both parties must be bound by it. In this instance the parties, apparently living in affluence, have made ample provision for the support of the wife; but suppose we turn it about, and the husband were trying to enforce such a contract, where the amount provided for the wife was trivial in comparison with his income. Out of the goodness of her heart and in reliance upon his good nature she may have signed such a contract of her own free will, and yet no court would hold her bound by it, especially if she became in need through sickness or other misfortune. Such was the *Tirrell* case (*supra*). If such contracts as these were held to be legal it would open the door to all kinds of imposition and hardships because a change in the financial circumstances of the husband would not alter the limit of his obligation. The husband is obliged to support his wife in accordance with his condition in life as long as they are living together as husband and wife, and contracts made which place any limitations upon the obligations imposed by law are illegal and of no effect. Where the parties have separated we have a different situation altogether, and contracts similar to this are then held to be legal. (*Winter* v. *Winter*, 191 N. Y. 462; *Galusha* v. *Galusha*, 116 N. Y. 635.)

For the reasons here stated, the order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs in this court and in the Appellate Division. The question certified should be answered in the affirmative.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.