Civil action to recover for services rendered by plaintiff to her late husband and for support furnished at his instance and for his benefit upon the express promise that he would "make a will . . . and devise to the plaintiff in fee . . . (the home place) his house and lot . . . in the City of Asheville."
John Ritchie was a porter or doorman at the Langren Hotel. On 18 February, 1936, he and the plaintiff were married and they lived together in Asheville until December, 1943, when they went to Philadelphia, Pa., so that the husband could have his eyes treated by a physician in that city and the wife could secure employment in a defense plant at good wages. They lived there as husband and wife until the husband's *Page 452 
death on 25 February, 1945, intending, however, to return to their home in Asheville after the war. There were no children of the marriage. Plaintiff's husband was much older than she.
In July, 1942, John Ritchie became helpless from old age, feeble health and rapidly failing eyesight. He entered into a verbal agreement with his wife to devise her the home place in exchange for her "doing his cooking, sewing, mending and nursing, and furnishing medicines, physicians, lodging, gas, telephone, lights, water, coal and food," stating at the time that the property would amply compensate her, and that he expected her to be paid for "her said services in providing for his nursing, care and support."
The plaintiff, in fulfillment of her promise and in expectation of compensation, first worked in Asheville and devoted her time and earnings to her own and her husband's support, and later in Philadelphia she paid her husband's bills for house rent, medicines, physicians, hospital, water, light and telephone and devoted herself to nursing, sewing, cooking, washing and mending for him. All the moneys expended by the plaintiff for her own support and that of her husband came from her earnings.
As plaintiff's husband died intestate, she filed claim with the administrator of his estate "for services and maintenance" rendered and provided under the agreement with her husband, which she valued at $2,352.20. The claim was rejected, hence this suit.
From judgment of nonsuit entered at the close of plaintiff's evidence, she appeals, assigning errors.
The question here presented is one of first impression in this jurisdiction. A widow seeks to recover for domestic services and for support furnished her husband under a promise by him to devise her the home place in his will. The husband dies intestate. Is the widow entitled to recover from his estate on quasi-contract or implied assumpsit the value of such services and support? The law answers in the negative.
While it is true that in ordinary transactions married women are permitted to deal with their earnings and property practically as they please or as free traders, Price v. Electric Co., 160 N.C. 450,76 S.E. 502, still there is nothing in the statutes to indicate a purpose on the part of the General Assembly to reduce the institution of marriage, or the obligations of family life, to a commercial basis. G.S., 52-12; 52-13. It is the public policy of the State that a husband shall provide support *Page 453 
for himself and his family. 41 C. J. S., 404; 26 Am. Jur., 934. This duty he may not shirk, contract away, or transfer to another. 41 C. J. S., 407. It is not a "debt" in the legal sense of the word, but an obligation imposed by law, and penal sanctions are provided for its willful neglect or abandonment. Garlock v. Garlock, 279 N.Y. 337, 18 N.E.2d 521, 120 A.L.R., 1331. See alimony and abandonment statutes. G.S., 14-322; 14-325; 50-16.
There are three parties to a marriage contract — the husband, the wife and the State. For this reason marriage is denominated a status, and certain incidents are attached thereto by law which may not be abrogated without the consent of the third party, the State. The moment the marriage relation comes into existence, certain rights and duties spring into being. One of these is the obligation of the husband to support his wife, Frenchv. McAnarney, 290 Mass. 544, 195 N.E. 714, 98 A.L.R., 530. "In the public interest the State has ever deemed it essential that certain obligations should attach to a marriage contract, amongst which is the duty of a husband to support his wife. Defendant was therefore shorn of power to enter into any arrangement or contract which would relieve him of such obligation." Tirrell v. Tirrell, 232 N.Y. 224, 133 N.E. 569.
Married couples are free to contract with each other concerning their property rights in the manner provided by the statutes on the subject, but they are not at liberty, by private agreement, to transfer from one to the other or to absolve either of the obligations which the marital status imposes. Van Koten v. Van Koten, 323 Ill. 323, 154 N.E. 146, 50 A.L.R., 347. "It is well settled that a husband is bound to support his wife."Reynolds v. Reynolds, 208 N.C. 254, 180 S.E. 70. And he may not by contract relieve himself of the duty to support himself and family, and cast such burden upon his wife. Corcoran v. Corcoran, 119 Ind. 138,21 N.E. 468, 4 L.R.A., 782, 12 Am. St. Rep., 390. The wife, on the one hand, is a feme covert with the rights, privileges and obligations incident to such status under the law. Coley v.Dalrymple, ante, 67. The husband is entitled to such domestic services as she may choose to perform, and to her aid, comfort, society and companionship, which the law regards as the full equivalent of support, like aid, comfort, society and companionship on the part of the husband. Helmstetler v. Power Co., 224 N.C. 821.
The case of Corcoran v. Corcoran, supra, is in many respects much like this one. There a husband conveyed a house and lot to his wife in consideration of her promise to provide the family support and maintenance. Upon default, the husband sued his wife in damages for breach of the contract. It was held that the alleged contract was not an enforceable agreement, and that the complaint did not state facts sufficient to *Page 454 
constitute a cause of action. In the course of the opinion, the Indiana Court had this to say: "The law makes it the duty of the husband not only to support himself, but his wife and children as well; and we know of no rule of law or of public policy which gives any countenance to an attempt by a husband to abdicate the duty which the law casts upon him, and impose it as an obligation upon his wife through the medium of an ordinary oral contract. . . . Under the enlightened policy of modern legislation, married women have been relieved of many common-law disabilities, but we have not yet progressed so far as to enable a married woman to bind herself by contract with her husband to assume his obligation to furnish support for both."
The mutual rights and duties growing out of the marital relationship are not affected by the statutes relating to the capacity of married women to contract and dispose of their property as if they were unmarried. G.S.,52-10, et seq.; Bank v. Turner, 202 N.C. 162, 162 S.E. 221. Domestic obligations incident to the marital status still subsist, and they may not be made the subject of commerce. The legal duties and liabilities of plaintiff and her husband remained the same after their agreement as they were before. Neither was relieved of any obligation and neither was bound to perform any additional duty. No new rights were created and no binding obligations were assumed. The contract was not legally enforceable. 13 R. C. L., 1188. If it were, both parties would be bound by it. And yet the husband certainly could not maintain an action for its breach or to enforce its performance. Garlock v. Garlock, supra; Corcoran v. Corcoran, supra. This limitation upon the right of husband and wife to renounce or to abrogate the marital obligations which attach by law applies not alone to one of the spouses, but equally to both. Mirizio v. Mirizio, 242 N.Y. 74,150 N.E. 605; 17 C. J. S., 616.
Clearly, the plaintiff may not recover for domestic services which are imposed by her marital status, even upon an express promise by her husband to pay for such services, as this would be without consideration and contrary to public policy. Frame v. Frame, 120 Tex. 61,36 S.W.2d 152, 73 A.L.R., 1512, and annotation; 17 C. J. S., 616. "The husband, as head of the family, is charged with its support and maintenance, in return for which he is entitled to his wife's services in all those domestic affairs which pertain to the comfort, care, and well-being of the family. Her labors are her contribution to the family support and care. Whether rendered in or out of the house, no implied obligation to pay arises." Cragford Bank v.Cummings, 216 Ala. 377, 113 So. 243.
In Foxworthy v. Adams, 136 Ky. 403, 124 S.W. 381, 27 L.R.A. (N.S.), 308, Ann. Cas. 1912-A, 327, it was held that notwithstanding legislative authority for husband and wife to contract with each other, *Page 455 
an agreement in which the husband promised to pay his wife for her services in nursing him during his last illness, or during any illness, was contrary to public policy, since she was under the duty as wife, if she performed such services, to perform them without special remuneration.
It is provided by G.S., 52-13, that contracts between husband and wife are valid, if "not forbidden by G.S., 53-12, and not inconsistent with public policy."
Likewise, if the contract for support be ineffectual, as it is here, whatever the wife expends under the agreement would be regarded as her contribution to the family budget. Dorsett v. Dorsett, 183 N.C. 354,111 S.E. 541. The law will not imply assumpsit where the parties may not effectually agree. This is not to say that plaintiff could not recover for moneys loaned, George v. High, 85 N.C. 99, or for promissory rents due from her separate estate, Battle v. Mayo, 102 N.C. 413, 9 S.E. 384, or for services rendered outside the home under an agreement with her husband,Dorsett v. Dorsett, supra, but the present case partakes of none of these.
In Oates v. Oates, ...... W. Va., ....., 33 S.E.2d 457, decided 27 February, 1945, it appears that a husband had conveyed a remainder interest in a tract of land to his wife for a recited consideration of $10 "and for the further consideration that said party of the second part shall attend to and provide a home for the party of the first part at the home place known as `Oats Farm.'" Upon failure of the wife to provide a home and support as she had agreed to do, the husband brought suit to have the deed canceled. The wife filed a cross bill and asked for specific performance of an anti-nuptial agreement. While holding the deed invalid for want of adequate consideration, the action was dismissed because it appeared that in other respects, neither the husband nor the wife had come into equity with clean hands. Anno. 109 A.L.R., 1174. It was said, however, "If the plaintiff and defendant intended that the latter (wife) should support and maintain the former (husband) such intention cannot be given effect." And further: "The marital duties of husband and wife cannot be made the subject of barter and trade, and either spouse performing such duties for compensation, either received or expected, is placed in the category of a servant. True, there are instances where the wife performs special services not of a domestic nature but in furtherance of the business of her husband, for which she may be entitled to compensation. After the marriage, it was incumbent upon defendant to perform the usual, ordinary tasks of the household, and to attend and nurse her aged husband in the event his physical condition required such attention. It follows that the implied promise on the part of the defendant given as a `further consideration' for the conveyance to her of the plaintiff's land is invalid." *Page 456 
Notwithstanding the arrangement between plaintiff and her husband, the latter remained liable for the support of both. Hence, voluntary payments of her husband's bills, would not entitle the plaintiff to recover the moneys so expended as a matter of law. Spalding v. Spalding, 361 Ill, 387,198 N.E. 136, 101 A.L.R., 433; 26 Am. Jur., 941. Speaking to a similar question in Bank v. Guenther, 123 N.Y. 568, 25 N.E. 986, 20 Am. St. Rep., 780, it was said: "So, too, her agreement to support the family in this case was, no doubt, illegal and perhaps void, in the sense that so long as it remained executory it could not be enforced against her, but as she entered into the agreement . . . she had the right to perform it, and having done so, could not undo what had been done by recalling what she had paid or requiring the husband to reimburse her for the outlay." This was later approved in Manufacturers Trust Co. v. Gray, 278 N.Y. 380,16 N.E.2d 373, 117 A.L.R., 1176.
Even in a separation agreement, executed after or in immediate contemplation of separation, the measure of the husband's liability is not necessarily determined by the terms of the agreement, but by what the law pronounces a just, fair and reasonable allowance to the wife in the light of the circumstances and condition of the parties. Smith v. Smith, ante, 189; Garlock v. Garlock, supra; Vock v. Vock, 365 Ill. 432, 6. N.E.2d 843, 109 A.L.R., 1170; Anno. 120 A.L.R., 1334.
Plaintiff suggests, however, that the moneys expended by her in discharge of her husband's obligations should be regarded as advancements or loans under the principle announced in George v. High, supra; Anno. 101 A.L.R., 442, or as payments impelled by necessity, which, for all practical purposes, rendered them involuntary, and therefore recoverable,McDaniel v. Trent Mills, 197 N.C. 342, 148 S.E. 440; ManufacturersTrust Co. v. Gray, supra; DeBrauwere v. DeBrauwere, 203 N.Y. 460,96 N.E. 722, 38 L.R.A. (N.S.), 508; 26 Am. Jur, 956. Cf. Galway v. DoodySteel Erecting Co., 103 Conn. 431, 130 A. 705, 44 A.L.R., 693. It is enough to say, in reply to this position, that such is not according to the allegations of the complaint. "Recovery is to be had, if allowed at all, on the theory of the complaint, and not otherwise." Balentine v. Gill,218 N.C. 496, 11 S.E.2d 456. Nor is the suggestion supported by the evidence.
It is conceded that the plaintiff cannot recover on her husband's promise to devise the home place to her in exchange for services to be rendered and support to be furnished, since the promise rests only in parol, Daughtry v. Daughtry, 223 N.C. 528, 27 S.E.2d 446, and that she is remitted to the doctrine of implied assumpsit or quantum meruit.Coley v. Dalrymple, supra; Neal v. Trust Co., 224 N.C. 103,29 S.E.2d 206. However, as stated above, the law will not imply a promise *Page 457 
to pay where the parties may not effectually bind themselves by agreement.
Finally, the plaintiff insists that she and her husband acted in good faith, and that the arrangement made, which was the only one possible in the circumstances, was in actual discharge of her husband's legal duty to provide support for himself and his family. Anno. 101 A.L.R., 442. From a practical standpoint, the argument may have a certain appeal, and had the husband devised the home place as he promised to do, the case would not be here. But we are face to face with the proposition that the agreement between the parties was ineffectual as a contract and unenforceable as such. 26 Am. Jur., 942. Hence, the law will not imply an enforceable agreement which the parties themselves could not effectually make.
The case is not like Grady v. Faison, 224 N.C. 567; Price v. Askins,212 N.C. 583, 194 S.E. 284; Lipe v. Trust Co., 207 N.C. 794,178 S.E. 665, and others of similar import, where recoveries for support and services were upheld on implied assumpsit or quasi-contract, it appearing that the parties, not being husband and wife, were free to enter into binding agreements on the subject. Implying and upholding that which the law approves is no authority for implying and upholding that which the law will not enforce.
The plaintiff's dower interest in the land is not at issue. She is seeking to recover for services rendered and support provided.
The judgment of nonsuit was properly entered.
Affirmed.