TRANSPAC CORPORATION, Plaintiff

v.

CHANDE DRABBLE dba BEACHCOMBER (A Sole Proprietorship), Defendant

TRANSPAC CORPORATION, Plaintiff

v.

CHANDE DRABBLE, dba TJ's RESTAURANT & BAR, Defendant

High Court of American Samoa
Trial Division

CA No. 1-93
CA No. 2-93

November 29, 1993

Before KRUSE, Chief Justice, MAILO, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.
 For Defendant, Afoafouvale L.S. Lutu

Transpac Corporation (hereafter "Transpac"), a local corporation, filed suit to evict the defendant Chande Drabble (hereafter "Chande"), as the "sole proprietor" of Beachcomber, a clothing shop, and TJ's, a bar and restaurant, from its Nu'uuli Shopping Center. These two establishments were lately managed and operated (unsuccessfully) by Chande. Beachcomber is no longer in business, and the space it once occupied has, since July 1993, reverted to Transpac. TJ's, on the other hand, is attempting some sort of comeback after several months of dormancy.

Besides its prayer for eviction, Transpac also seeks back rent from Chande. For Beachcomber, Transpac claims unpaid rent from January 1, 1988, to October 31, 1992, in the amount of $96,362.34. This amount is said to be inclusive of interest calculated at the rate of 6% per annum.[1] For TJ's, Transpac similarly claims rental arrears in the amount of the $83,935.71. Additionally, Transpac's complaint prays for unspecified rent to date; however, its evidence in this regard was tentative and approximate.

There are no written leases; however, Transpac claims oral leases and has tendered rental- arrearage statements on the basis that its figures are what third-party, arm's-length transactions would have yielded for comparable space at the Nu'uuli Shopping Center.

## DISCUSSION

### I. Rents

We find the claims for rent and arrearage to be unfounded and, therefore, deny the same. First, there is a domestic aspect to the alleged leases which thoroughly taints any claim to arm's-length dealings. Chande is married to Tom Drabble (hereafter "Tom"), who testified that he is both president and majority shareholder of Transpac. The Drabbles' marriage has in fact failed, and Chande and Tom have gone their separate ways since January 1989, after the latter left the marital home in Iliili. Their respective attempts to obtain a divorce have been unsuccessful; the domestic court dismissed their cross-petitions, pursuant to A.S.C.A. §42.0206(a)(5), after sustaining each party's claim of fault against the other. See Drabble v. Drabble, DR No. 69-90 (1992). With

---

[1] Interest at the rate of 6% per annum may be presumed on overdue debts when there is no written agreement. A.S.C.A. § 28.1501.

the dismissal of the divorce case, the domestic court did not therefore address the usual ancillary issues regarding the division of marital property. *See* A.S.C.A. § 42.0210. Consequently, these proceedings have taken on the unmistakable flavor of a continuing, and as yet unresolved, domestic dispute.

In Beachcomber's case, the evidence shows that this business had its inception in the pursuit of a marital purpose. This business was conceived and set up by Tom in 1975, to be run by his wife, to provide a source of income to meet the family's needs and expenses. Chande testified that she essentially ran the marital household from Beachcomber earnings without having to ask Tom for money. She further testified that Beachcomber had contributed the sum of $30,000 towards the construction of the marital home. Although Tom now claims that Beachcomber is Chande's "sole proprietorship," the evidence showed that Tom had, until quite recently, treated and held out Beachcomber as a marital asset for purposes of personal income tax filings, personal financial statements, and property settlement proposals during the divorce action. The evidence also revealed that while Beachcomber had in the past paid rent to Transpac, it further showed that it was Tom, and not Chande, who created the clothing shop and set up some sort of a tenancy arrangement with Transpac. According to Chande, Transpac at one time was also utilizing Beachcomber's attic for storage.

A lease, like any other bilateral contract, requires at least two parties to agree to something. Chande was not a negotiating party to any leasehold arrangement with Transpac, until quite recently, when the latter began to make demands upon her for a written leasehold relationship--these demands, which arose after the Drabbles' separation, have yet to be accepted by Chande. Tom's mere renunciation of interest in Beachcomber and his insistence that the now-defunct Beachcomber is Chande's "sole proprietorship" does not make Chande any more a Transpac lessee than Tom.[2] That Chande is the sole defendant in this matter has, in our view, more to do with the fact that Tom is Transpac's chief executive officer rather than any arm's-length dealings between Transpac and Chande.

---

[2] Chande contends that if she is liable to Transpac for rent then Tom, as her husband, is responsible for her debt under the ancient common law doctrine of coverture. Because of the result we reach, we need not confront the question whether this obsolete, and statutorily abolished, marital convention of old England squares with the modern day *fa'a Samoa* on *le nofotane* (the married woman).

■ In the case of TJ's, the evidence is also lacking with respect to a lease between Transpac and Chande. Indeed, the evidence has been to the contrary; Transpac's recent lease proposal to Chande has yet to be accepted. In these circumstances, it is not for the court to fabricate an agreement, under the guise of reasonable inferences, where clearly the parties have either failed to agree or have yet to agree. Furthermore, TJ's was another idea of Tom's that started out either as a Transpac venture, a Sadie's Restaurant (an affiliate) venture, or a personal venture, at a time when the Drabbles were still a domestic unit. All that may be gleaned from the testimony is that the intentions were ill-defined at the outset, and they became even more so as the Drabbles' marital situation deteriorated. What is clear now is that Tom wants nothing more to do with TJ's. We conclude that there are no oral lease agreements express or implied, between Transpac and Chande.

## II. Eviction

■ On this count, Chande's only defense is that she needs the space occupied by TJ's in order to support herself, as she has no other source of income. Although plaintiff may be a closed corporation and may well be part of the marital assets subject to equitable distribution at the appropriate proceeding, *see Rocha v. Rocha*, 20 A.S.R.2d 63 (App. Div. 1992), Chande's self-help resort to corporate assets cannot be sustained. Her need for support is no defense; her remedy lies at common law against her husband,[3] not the plaintiff corporation. The petition for eviction should thus be granted.

For reasons given, judgment will enter for defendant Chande Drabble on plaintiff's claim for rent and arrearage and for plaintiff Transpac Corporation on its petition for eviction.

It is so ordered.

■

---

[3] See *e.g. Garlock v. Garlock*, 18 N.E.2d 521 (N.Y. App. 1939); *Guthrie v. Bobo*, 43 So.2d 871 (Miss. 1950).